IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| COMMON CAUSE; the NORTH CAROLINA DEMOCRATIC PARTY; LARRY D. HALL; DOUGLAS BERGER; CHERYL LEE TAFT; RICHARD TAFT; ALICE L. BORDSEN; MORTON LURIE, WILLIAM H. FREEMAN; MELZER A. MORGAN, JR.; CYNTHIA S. BOYLAN; COY E. BREWER, JR.; JOHN MORRISON MCNEILL; ROBERT WARREN WOLF; JONES P. BYRD; JOHN W. GRESHAM; RUSSELL G. WALKER, JR., | CIVIL ACTION NO. 1:16-CV-1026  THREE-JUDGE COURT |
| PLAINTIFFS, | |
| v. | |
| ROBERT A. RUCHO, in his official capacity as Chairman of the North Carolina Senate Redistricting Committee for the 2016 Extra Session and Co-Chairman of the Joint Select Committee on Congressional Redistricting; | |
| DAVID R. LEWIS, in his official capacity as Chairman of the North Carolina House of Representatives Redistricting Committee for the 2016 Extra Session and Co-Chairman of the Joint Select Committee on Congressional Redistricting; | |
| PHILIP E. BERGER, in his official capacity as the President Pro Tempore of the North Carolina Senate; | |
| TIMOTHY K. MOORE, in his official capacity as the Speaker of the North Carolina House of Representatives; | |
| A. GRANT WHITNEY, JR., in his official capacity as Chairman and acting on behalf of the North Carolina State Board of Elections; | |

THE NORTH CAROLINA STATE BOARD OF
ELECTIONS; and

THE STATE OF NORTH CAROLINA,

                                    DEFENDANTS.

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiffs, with Defendants' consent, amend their Complaint as follows:

## INTRODUCTION

1.      This is an action to declare the North Carolina 2016 Congressional

Redistricting Plan (N.C. Sess. Law 2016-1) ("the 2016 Plan") as a whole, and each of the

thirteen congressional districts created by that Plan, to be unconstitutional partisan

gerrymanders that violate the First Amendment (Count I), the Equal Protection Clause of

the Fourteenth Amendment (Count II), and Article I, section 2 of the Constitution of the

United States (Count III), and also to declare that in adopting the 2016 Plan the

legislature exceeded the authority granted by Article I, section 4 of the U.S. Constitution,

which provides that state legislatures "determine the times, places and manner of

election" of members of the U.S. House of Representatives (Count IV).

## THE PARTIES

2.      The plaintiffs are:

(a)     Common Cause, on its own behalf and on behalf of its members who are

citizens of North Carolina and are registered Democratic voters, whose votes in

congressional elections have been diluted or nullified as a result of the unconstitutional

gerrymander by the 2016 Plan of North Carolina's thirteen congressional districts.

2

Common Cause is a non-profit corporation organized and existing under the laws of the District of Columbia. It is a nonpartisan democracy organization with over 450,000 members and local organizations in 35 states, including North Carolina. Since its founding by John Gardner in 1970, Common Cause has been dedicated to fair elections and making government at all levels more representative, open and responsive to the interests of ordinary people. "For the past twenty-five years, Common Cause has been one of the leading proponents of redistricting reform." Jonathan Winburn, The Realities of Redistricting p. 205 (2008).

(b) Gerrymandering is not a partisan issue that favors one party or another. Gerrymanders have been used by both Democrats and Republicans to entrench their power almost since the founding of this Nation. Whether done by Democrats or Republicans, partisan gerrymanders are antithetical to our democracy. Common Cause is at the forefront of efforts to combat gerrymandering, no matter what party is responsible, in the belief that when election districts are created in a fair and neutral way, the People will be able to elect representatives who truly represent them. To that end, Common Cause has organized and led the coalitions that secured passage of ballot initiatives that created independent redistricting commissions in Arizona and California and campaigned for ratification of an amendment to the Florida Constitution prohibiting partisan gerrymandering. Common Cause is the sponsor of the annual Gerrymander Standards Writing Competition. In this case, Common Cause is opposing a Republican gerrymander in North Carolina, but at the same time Common Cause is opposing a

3

Democratic gerrymander in Maryland, where it has appeared as *amicus curiae* in the Supreme Court in *Shapiro v. McManus*, ___ U.S. ___, 136 S. Ct. 450 (2015), and in the district court on remand, 1:13-cv-03233-JKB (D. Md.).  For Common Cause, these are issues of principle, not of party, and it is committed to eliminating the harm caused to its members and all citizens by these practices.

(c)     The North Carolina Democratic Party ("NCDP") is a political party as defined in N.C. Gen. Stat. § 163-96.  Its purposes are (i) to bring people together to develop public policies and positions favorable to NCDP members and the public generally, (ii) to identify candidates who will support and defend those policies and positions, and (iii) to persuade voters to cast their ballots for those candidates.  These purposes are essential to the functioning of our democracy.  Defendants' unlawful partisan gerrymander was adopted to discriminate against the NCDP and its members because of their beliefs and association and to suppress or nullify the capacity of the NCDP to achieve its essential purposes for its members.

(d)     Larry D. Hall is a registered Democratic voter residing at 1526 Southwood Drive in the City of Durham in Durham County, North Carolina.  He practices law in Durham and is a Democratic member of the North Carolina House of Representatives.  Defendants assigned Representative Hall to Congressional District ("CD") 1 for the 2016 election.  Together with all other Democratic voters, Representative Hall has been harmed by Defendants' unlawful gerrymandering because it treats him unequally based

4

on his political beliefs and association. His vote for the U.S. House of Representatives will be diluted or nullified as a result of his placement in CD 1.

(e)     Douglas Berger is a registered Democratic voter residing at 125 Hunters Lane in the City of Youngsville in Franklin County, North Carolina. He is a lawyer and former member of the North Carolina Senate. Defendants assigned Mr. Berger to CD 2 for the 2016 election. Together with all other Democratic voters, Mr. Berger has been harmed by Defendants' unlawful gerrymandering because it treats him unequally based on his political beliefs and association. His vote for the U.S. House of Representatives will be diluted or nullified as a result of his placement in CD 2.

(f)     Dr. and Mrs. Richard and Cheryl Lee Taft are registered Democratic voters residing at 303 Kenilworth Road in the City of Greenville in Pitt County, North Carolina. He is a retired physician, and she is a landscape architect. Defendants assigned Dr. and Mrs. Taft to CD 3 for the 2016 election. Together with all other Democratic voters, Dr. and Mrs. Taft have been harmed by Defendants' unlawful gerrymandering because it treats them unequally based on their political beliefs and association. Their votes for the U.S. House of Representatives will be diluted or nullified as a result of their placement in CD 3.

(g)     Alice L. Bordsen is a registered Democratic voter residing at 706 Copperline Drive #202 in the Town of Chapel Hill in Orange County, North Carolina. She is a lawyer and former Democratic member of the North Carolina House of Representatives. Defendants assigned Ms. Bordsen to CD 4 for the 2016 election.

Together with all other Democratic voters, Ms. Bordsen has been harmed by Defendants' unlawful gerrymandering because it treats her unequally based on her political beliefs and association. Her vote for the U.S. House of Representatives will be diluted or nullified as a result of her placement in CD 4.

(h)     Morton Lurie is a registered Republican voter residing at 4112 Landfall Court in the City of Raleigh in Wake County, North Carolina. He is retired. Defendants assigned Mr. Lurie to CD 4 for the 2016 election. Together with all other Republican voters assigned to CD 4, Mr. Laurie has been harmed by Defendants' unlawful gerrymandering because it treats him unequally based on his political beliefs and association. His vote for the U. S. House of Representatives will be diluted or nullified as a result of his placement in CD 4.

(i)     William H. Freeman is a registered Democratic voter residing at 112 Westhaven Circle in the City of Winston-Salem in Forsyth County, North Carolina. He practices law in Winston-Salem and is a retired Superior Court Judge. Defendants assigned Judge Freeman to CD 5 for the 2016 election. Together with all other Democratic voters, Judge Freeman has been harmed by Defendants' unlawful gerrymandering because it treats him unequally based on his political beliefs and association. His vote for the U.S. House of Representatives will be diluted or nullified as a result of his placement in CD 5.

(j)     Melzer A. Morgan, Jr. is a registered Democratic voter residing at 1607 Courtland Avenue in the City of Reidsville in Rockingham County, North Carolina. He

is a retired Superior Court Judge. Judge Morgan was assigned to CD 6 for the 2016 election. Together with all other Democratic voters, Judge Morgan has been harmed by Defendants' unlawful gerrymandering because it treats him unequally based on his political beliefs and association. His vote for the U.S. House of Representatives will be diluted or nullified as a result of his placement in CD 6.

(k)     Cynthia S. Boylan is a registered Democratic voter residing at 612 Forest Hills Drive in the City of Wilmington in New Hanover County, North Carolina. She is a retired member of the North Carolina Department of Justice. Defendants assigned Ms. Boylan to CD 7 for the 2016 election. Together with all other Democratic voters, Ms. Boylan has been harmed by Defendants' unlawful gerrymandering because it treats her unequally based on her political beliefs and association. Her vote for the U.S. House of Representatives will be diluted or nullified as a result of her placement in CD 7.

(l)     Coy E. Brewer, Jr. is a registered Democratic voter residing at 909 Calamint Lane in the City of Fayetteville in Cumberland County, North Carolina. He practices law in Fayetteville and is a retired Superior Court Judge. Judge Brewer was assigned to CD 8 for the 2016 election. Together with all other Democratic voters, Judge Brewer has been harmed by Defendants' unlawful gerrymandering because it treats him unequally based on his political beliefs and association. His vote for the U.S. House of Representatives will be diluted or nullified as a result of his placement in CD 8.

(m)     John Morrison McNeill is a registered Democratic voter residing at 225 East 3rd Ave. in the Town of Red Springs in Robeson County, North Carolina. He

7

currently serves as Mayor of Red Springs. Defendants assigned Mr. McNeill to CD 9 for the 2016 election. Together with all other Democratic voters, Mr. McNeill has been harmed by Defendants' unlawful gerrymandering because it treats him unequally based on his political beliefs and association. His vote for the U.S. House of Representatives will be diluted or nullified as a result of his placement in CD 9.

(n)     Robert Warren Wolf is a registered Democratic voter residing at 238 Knollwood Drive in the Town of Forest City in Rutherford County, North Carolina. He practices law in Forest City. Defendants assigned Mr. Wolf to CD 10 for the 2016 election. Together with all other Democratic voters, Mr. Wolf has been harmed by Defendants' unlawful gerrymandering because it treats him unequally based on his political beliefs and association. His vote for the U.S. House of Representatives will be diluted or nullified as a result of his placement in CD 10.

(o)     Jones P. Byrd is a registered Democratic voter residing at 89 Edgelawn Drive in the City of Asheville in Buncombe County, North Carolina. He practices law in Asheville and is former Chair of the Buncombe County Board of Elections. Defendants assigned Mr. Byrd to CD 11 for the 2016 election. Together with all other Democratic voters, Mr. Byrd has been harmed by Defendants' unlawful gerrymandering because it treats him unequally based on his political beliefs and association. His vote for the U.S. House of Representatives will be diluted or nullified as a result of his placement in CD 11.

(p)　　　John W. Gresham is a registered Democratic voter residing at 717 E. Kingston Ave. in the City of Charlotte in Mecklenburg County, North Carolina.  He practices law in Charlotte.  Defendants assigned Mr. Gresham to CD 12 for the 2016 election.  Together with all other Democratic voters, Mr. Gresham has been harmed by Defendants' unlawful gerrymandering because it treats him unequally based on his political beliefs and association.  His vote for the U.S. House of Representatives will be diluted or nullified as a result of his placement in CD 12.

(q)　　　Russell G. Walker, Jr. is a registered Democratic voter residing at 104 Jordan Ridge Way in the City of Jamestown in Guilford County, North Carolina.  He is a retired Superior Court Judge.  Defendants assigned Judge Walker to CD 13 for the 2016 election.  Together with all other Democratic voters, Judge Walker has been harmed by Defendants' unlawful gerrymandering because it treats him unequally based on his political beliefs and association.  His vote for the U.S. House of Representatives will be diluted or nullified as a result of his placement in CD 13.

3.　　　The defendants are:

(a)　　　Robert A. Rucho, in his official capacity as Chairman of the North Carolina Senate Redistricting Committee for the 2016 Extra Session and Co-Chairman of the Joint Select Committee on Congressional Redistricting;

(b)　　　David R. Lewis, in his official capacity as Chairman of the North Carolina House of Representatives Redistricting Committee for the 2016 Extra Session and Co-Chairman of the Joint Select Committee on Congressional Redistricting;

9

(c)     Philip E. Berger, in his official capacity as the President Pro Tempore of the North Carolina Senate;

(d)     Timothy K. Moore, in his official capacity as the Speaker of the North Carolina House of Representatives;

(e)     A. Grant Whitney, Jr., in his official capacity as Chairman and acting on behalf of the North Carolina State Board of Elections;

(f)     The North Carolina State Board of Elections, which is the agency that is charged with the responsibility for the administration of the election laws of the State of North Carolina and with the "general supervision over the primaries and elections in the State," N.C. Gen. Stat. § 163-22(a), including elections of the thirteen members of the United States House of Representatives from North Carolina;

(g)     The State of North Carolina, a sovereign state of the United States. Its legislative power is vested in the General Assembly. N.C. Const. Art. II, § 1. That power is "derived from the people" and must be exercised "solely for the good of the whole." *Id.* Art. 1 § 2. Among the rights granted North Carolinians is the right "to assemble together … to instruct their representatives" and the right "to apply to the General Assembly for the redress of grievances." *Id.* § 12.

## JURISDICTION AND VENUE

4.     This case arises under the Constitution of the United States, the issues are justiciable and well within the established subject-matter jurisdiction of this Court under 28 U.S.C. §§ 1331, 1343, 1357, 2201 and 42 U.S.C. § 1983, and must be heard and

determined by a district court of three judges under 28 U.S.C. § 2284. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

5.     From 2002 until 2012, North Carolina was represented in Congress by thirteen representatives elected from districts established under a reapportionment plan adopted by the North Carolina General Assembly in 2001 (the "2001 Plan") to conform to the one-person, one-vote requirements of Article I, § 2 of the U.S. Constitution. *See Wesberry v. Sanders*, 376 U.S. 1, 84 S. Ct. 526 (1964).

6.     Five congressional general elections were conducted under the 2001 plan, beginning in 2002 and ending in 2010. The following chart reflects the number and percent of votes cast in favor of Democratic and Republican candidates for Congress in those elections, as well as the number and percent of Democratic and Republican candidates actually elected to Congress under the 2001 plan:

| Year | North Carolina State-wide Votes in U.S. House Elections | | | | Representatives Elected to U.S. House for North Carolina | | | |
| | Number of Democratic ("DEM") Votes | DEM Votes as % of Total Votes | Number of Republican ("GOP") Votes | GOP Votes as % of Total Votes | Number of DEM Repre-sentatives ("Reps") | DEM Reps. as % of Total Reps. | Number of GOP Reps. | GOP Reps. as % of Total Reps. |
|------|------|------|------|------|------|------|------|------|
| 2002 | 970,716 | 45% | 1,209,033 | 54% | 6 | 46% | 7 | 54% |
| 2004 | 1,669,864 | 49% | 1,743,131 | 51% | 6 | 46% | 7 | 54% |
| 2006 | 1,026,915 | 53% | 913,893 | 47% | 7 | 54% | 6 | 46% |
| 2008 | 2,293,971 | 54% | 1,901,517 | 45% | 8 | 62.5% | 5 | 38.5% |
| 2010 | 1,204,635 | 45% | 1,440,913 | 54% | 7 | 54% | 6 | 46% |

7.      In 2011, the Republican party gained control of both houses of the North Carolina General Assembly and enacted a new congressional redistricting plan (the "2011 Plan") that resulted in the election of nine Republicans and four Democrats to Congress in 2012 and ten Republicans and three Democrats in 2014.

8.      The 2011 Plan dramatically altered the composition of the North Carolina delegation elected to Congress in the 2012 and 2014 general elections:

|  | North Carolina State-wide Votes in U.S. House Elections | | | | Representatives Elected to U.S. House for North Carolina | | | |
|---|---|---|---|---|---|---|---|---|
| Year | Number of Democratic ("DEM") Votes | DEM Votes as % of Total Votes | Number of Republican ("GOP") Votes | GOP Votes as % of Total Votes | Number of DEM Representatives ("Reps") | DEM Reps. as % of Total Reps. | Number of GOP Reps. | GOP Reps. as % of Total Reps. |
| 2012 | 2,218,357 | 51% | 2,137,167 | 49% | 4 | 31% | 9 | 69% |
| 2014 | 1,361,695 | 44% | 1,596,942 | 55% | 3 | 23% | 10 | 77% |

9.      On February 5, 2016, the 2011 North Carolina Congressional Redistricting Plan was declared unconstitutional by a three-judge district court in *Harris v. McCrory*, No. 1:13-CV-949, 2016 WL 482052 (M.D.N.C. Feb. 5, 2016), *appeal docketed,* No. 15-1262 (U.S. Apr. 11, 2016).  The court held that both the First Congressional District and the Twelfth Congressional District were the product of unconstitutional racial gerrymanders that violated the Equal Protection Clause of the Fourteenth Amendment and enjoined the State from conducting the 2016 primary and general elections under the 2011 Plan.  *Id.* at *17, *21.

10.     In response to the ruling of the court in *Harris*, the Republican leadership in both the North Carolina House and Senate appointed a Joint Select Committee on Redistricting (the "Joint Committee") to draft a new congressional redistricting plan.  The Joint Committee was composed of 25 Republicans and 12 Democrats.  It was co-chaired by the same two Republican legislators, Representative David Lewis and Senator Robert Rucho, who had co-chaired the Joint Committee responsible for drafting the unconstitutional 2011 Congressional Redistricting Plan.

11.     The Joint Committee met on February 16, 2016, to consider the adoption of a set of written redistricting criteria that was drafted by the two Republican co-chairs of the Committee, defendants Representative Lewis and Senator Rucho.

12.     At the Joint Committee hearing, Representative Lewis explained the written criteria.  He said that, **"to the extent possible, the map drawers [would be instructed to] create a map which is perhaps likely to elect ten Republicans and three Democrats."**  February 16, 2016 North Carolina Joint Select Committee on Congressional Redistricting (2015) Hearing Transcript ("Tr."), available at https://redistricting.lls.edu/files/NC%20Harris%2020160217%20Transcript.pdf, at 48 (emphasis added).  Representative Lewis freely **"acknowledge[d] … that this would be a political gerrymander,"** which, he claimed, "is not against the law." *Id.* (emphasis added).

13.     Representative Lewis went on to **"propose that we draw the maps to give a partisan advantage to ten Republicans and three Democrats because I do not**

believe it's possible to draw a map with 11 Republicans and two Democrats." Tr. 50 (emphasis added).

14.     Representative Lewis emphasized that by adopting the written criteria, "we [the Joint Committee] **want to make clear that we…are going to use political data in drawing this map.  It is to gain partisan advantage on the map. … I want that criteria to be clearly stated and understood.**" Tr. 53-4 (emphasis added).

15.     Representative Lewis said that race would not be considered in drawing the new congressional district map, and emphasized that the only information other than population that would be used to draw the lines of the new congressional districts to maintain the existing 10-3 Republican partisan advantage would be "political data." Tr. 54. He specifically said that the Joint Committee would use **"political data, which was the earlier criteria adopted by th[e] committee [in 2011]. … [A]s you draw the lines, if you're trying to give a partisan advantage, you would draw the lines so that more of the whole VTDs [Voter Tabulation Districts] voted for the Republican on the ballot than they did the Democrat**." Tr. 57 (emphasis added).

16.     The Joint Committee voted to adopt the written criteria that Representative Lewis and Senator Rucho proposed by a strict party-line vote.  A true and correct copy of the 2016 Contingent Congressional Plan Committee Adopted Criteria is attached as Exhibit A and is incorporated herein by reference (and hereinafter referred to as the "2016 Adopted Criteria").

17.     The 2016 Adopted Criteria expressly instructed the mapmakers to make a

"reasonable effort" to draw a new North Carolina congressional district map that would

maintain the existing 10-3 Republican "Partisan Advantage":

### Partisan Advantage

The partisan makeup of the congressional delegation under the enacted plan
is 10 Republicans and 3 Democrats.  **The Committee shall make
reasonable efforts to construct districts in the 2016 Contingent
Congressional Plan to maintain the current partisan makeup of North
Carolina's congressional delegation.**

Exhibit A (emphasis added).

18.     The 2016 Adopted Criteria also gave the mapmakers specific instructions

that, other than population, they should use only "political data" to redraw the lines of

North Carolina's thirteen congressional districts.  The "political data" reflected whether

the people in each Voter Tabulation District had voted in favor of Democratic or

Republican candidates for certain state-wide elections since 2008 (excluding, however,

the 2008 and 2012 presidential elections):

### Political Data

**The only data other than population data to be used to construct
congressional districts *shall be election results in statewide contests since
January 1, 2008*, not including the last two presidential contests.  Data
identifying the race of individuals or voters shall not be used in the
construction or consideration of districts in the 2016 Contingent
Congressional Plan.  Voting districts ("VTDs") should be split when
necessary to comply with the zero deviation population requirements
set forth above in order to ensure the integrity of political data.**

*Id.* (emphasis added)

19.     It took mapmakers only one day, using the "political data" specified in the 2016 Adopted Criteria, to draft a new congressional redistricting plan that would preserve and maintain the Republican Party's 10-3 partisan advantage.  That plan was presented to and approved by the Joint Committee on February 17, 2016.

20.     The next day, February 18, 2016, the new 2016 Plan was introduced in the North Carolina Senate and was passed that same day in a straight party-line vote of 32 Republicans voting for the Plan and 15 Democrats voting against it.

21.     The new 2016 Plan was introduced in the House of Representatives on the following day, February 19, 2016, and was passed and thus enacted into law by another straight party-line vote, with 65 Republicans voting for the Plan and 43 Democrats opposing it.

22.     A true and correct copy of the final 2016 Congressional Redistricting Plan as enacted by the North Carolina General Assembly is attached hereto as Exhibit B and is incorporated herein by reference.

23.     As of the date of enactment of the 2016 Plan, there were 2,634,903 registered Democrats, 1,976,873 registered Republicans, and 1,844,264 unaffiliated registered voters in North Carolina.  *N.C. Voter Statistics Results, Reporting Period: 2/20/2016*, North Carolina State Board of Elections, http://enr.ncsbe.gov/voter_stats/results.aspx?date=02-20-2016.  In other words, Defendants enacted a plan designed to give Republicans a 10-3 seat majority when Republicans comprised only 30% of the registered voters.

16

24.     A statistical analysis of the 2016 Plan will confirm that the gerrymander of North Carolina's thirteen congressional districts to perpetuate the 10-3 partisan advantage in favor of the Republican Party and Republican candidates is intentional and is not the product of chance or the neutral application of legitimate redistricting principles. Hundreds of alternative plans can be drawn based on traditional redistricting principles that would have been far less partisan than the 2016 Plan, and that would have created districts more likely to result in the election of a congressional delegation more representative of the support of Democratic and Republican candidates by the voters of North Carolina. The statistical likelihood that the 10-3 partisan advantage in favor of the Republican Party and Republican candidates created by the 2016 Plan is the result of chance is virtually nonexistent.

## COUNT ONE

25.     The facts alleged above in paragraphs 1-24 are hereby incorporated by reference as allegations of Count One of the complaint.

26.     The 2016 North Carolina Congressional Redistricting Plan as a whole and each of the thirteen individual districts created by that Plan violate the First Amendment and the due process clause of the Fourteenth Amendment to the Constitution of the United States, are invalid, and should be enjoined.  *See Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n.1, 116 S. Ct. 1495, 1501 n.1 (1996) (applying the First Amendment to the states).

27.     The First Amendment "has its fullest and most urgent application … to the conduct of campaigns for political office," *McCutcheon v. FEC*, 572 U.S. __, 134 S. Ct. 1434, 1441(2014).  It protects the right of voters to join or support a political party, and to vote for the candidate of their choice, which are the "core of those activities protected by the First Amendment" without which a representative democracy cannot function.  *Elrod v. Burns*, 427 U.S. 347, 356, 96 S. Ct. 2673, 2681 (1976) (plurality opinion).

28.     "Partisan gerrymanders . . . are incompatible with democratic principles." *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. __, 135 S. Ct. 2652, 2658 (2015) (alterations adopted); *see Vieth v. Jubelirer*, 541 U.S. 267, 292, 124 S. Ct. 1769, 1785 (2004) (Scalia, J., plurality opinion); *Vieth*, 541 U.S. at 316, 124 S. Ct. at 1798 (Kennedy, J., concurring); *Vieth*, 541 U.S. at 324, 124 S. Ct. at 1803 (Stevens, J., concurring in part and dissenting in part); *see also Harris v. Ariz. Indep. Redistricting Comm'n*, 578 U.S. __, 136 S. Ct. 1301, 1310 (2016) ("assuming, without deciding, that partisanship is an illegitimate redistricting factor"); *N.C. State Conference of the NAACP v. McCrory*, No. 16-1468, 2016 U.S. App. LEXIS 13797, at *33 n.6 (4th Cir. July 29, 2016) ("Of course, state legislators also cannot impermissibly dilute or deny the votes of opponent political parties…as this same General Assembly was found to have done earlier this year.") (internal citations omitted) (citing *Raleigh Wake Citizens Ass'n v. Wake Cty. Bd. of Elections*, No. 16-1270, 2016 WL 3568147 (4th Cir. July 1, 2016)).

29.     The 2016 Plan violates the First Amendment by favoring some voters (e.g., Republican supporters of the party in power) and by burdening or penalizing other voters

18

(e.g., Democratic voters) based on the content of the voters' political expression or beliefs, their political party memberships or affiliations, or their voting histories in favor of a political party or its candidates. *See Vieth*, 541 U.S. at 314–16, 124 S. Ct. at 1797–98 (Kennedy, J., concurring); *see also id.* at 324, 124 S. Ct. at 1803 (Stevens, J., concurring in part and dissenting in part); *LULAC v. Perry*, 548 U.S. 399, 461-62, 126 S. Ct. 2594, 2634–35 (2006) (Stevens, J., joined by Breyer, J., concurring in part and dissenting in part).

30. The Republican majority in the North Carolina General Assembly also violated the First Amendment by using the partisan "political data" specified in the 2016 Adopted Criteria to draft and enact the 2016 Congressional Redistricting Plan to perpetuate and maintain the Republicans' 10-3 advantage in the North Carolina congressional delegation by intentionally favoring Republican voters over Democratic voters based on their political beliefs, party affiliations, and voting histories when assigning citizens to CDs 2, 3, 5, 6, 7, 8, 9, 10, 11 and 12, and by intentionally favoring Democratic voters over Republican voters when assigning citizens to CDs 1, 4, and 13.

31. The 2016 Plan impinges on "the First Amendment interest of not burdening or penalizing citizens because of their participation in the electoral process, their voting history, their association with a political party, or their expression of political views. Under general First Amendment principles, those burdens … are unconstitutional absent a compelling [state] interest." *Vieth*, 541 U.S. at 314, 124 S. Ct. at 1797 (Kennedy, J., concurring) (citation omitted); *see also id.* at 324, 124 S. Ct. at 1803 (Stevens, J.,

concurring in part and dissenting in part); *LULAC*, 548 U.S. at 461–62, 126 S. Ct. at 2634–35 (Stevens, J., joined by Breyer, J., concurring in part and dissenting in part).

32.     The 2016 Plan also violates the First Amendment duty of state governments and state officials to *govern impartially* and maintain a position of *strict political neutrality* in the adoption of laws that distribute political representation and power among the people through the apportionment of congressional and state legislative districts.

33.     The First Amendment duty to govern impartially was violated when the majority party in the North Carolina General Assembly used its control of the congressional redistricting process for partisan advantage—to maximize and entrench its hold on political power by gerrymandering the districts in its favor, making it more difficult for the NCDP and its members to elect the candidates of their choice to Congress.

34.     The purpose and the effect of the 2016 Plan was to give the Republican Party and Republican candidates for Congress in North Carolina a partisan advantage over the NCDP and Democratic candidates.  The 2016 Plan enhances the effectiveness of the votes of as many Republican voters as possible by creating ten districts with safe Republican majorities, in which votes cast by Democratic voters are diluted or nullified and have no effect on the outcome of the general congressional election in those districts, and by creating three districts with safe Democratic majorities in which votes cast by Republican voters are diluted or nullified and have no effect on the outcome of the general congressional election in those districts.

20

35.     The purpose and effect of the 2016 Plan was also to burden and penalize both the NCDP and Democratic voters by: (i) packing as many Democratic voters as possible into the First, Fourth, and Twelfth Congressional Districts, where the excess votes of Democratic voters beyond those necessary to elect a Democratic candidate of their choice would be essentially wasted; and (ii) diluting or nullifying the votes of the remaining Democratic voters who reside outside of these three districts by dispersing (or "cracking") all remaining Democratic voters among the other ten districts which were safe Republican majorities, where their (the Democrats') votes in favor of Democratic candidates cannot affect the outcome of the general election.  These actions denied the NCDP and its voters a fair opportunity to elect a Democratic candidate of their choice in any of these ten Republican-dominated districts.

36.     Although the 2016 Plan only divided thirteen counties, any one of thousands of alternative plans could have been enacted by the General Assembly that also would have only divided thirteen counties without creating a disproportionate 10-3 partisan advantage in favor of the Republican Party and its candidates.

37.     The 2016 Plan as a whole, and each of its thirteen individual districts, were gerrymandered based on the content of the political beliefs, political affiliations, and voting histories of the voters in each district and are, both individually and collectively, subject to strict scrutiny.

38.     The 2016 Plan is not justified by any *legitimate* state interest of such compelling and paramount importance that justifies burdening or penalizing the First Amendment rights of Democratic voters and the NCDP.

## COUNT TWO

39.     The facts alleged in paragraphs 1-24 are hereby incorporated by reference as allegations of Count Two of the complaint.

40.     The 2016 North Carolina Congressional Redistricting Plan and each of the thirteen individual districts created by that Plan deprive the NCDP and Democratic voters of equal protection of the laws in violation of the Fourteenth Amendment, are invalid, and their enforcement should be enjoined.

41.     "The object of districting is to establish 'fair and effective representation for all citizens.'" *Vieth*, 541 U.S. at 307, 124 S. Ct. at 1793 (Kennedy, J., concurring) (quoting *Reynolds v. Sims,* 377 U.S. 533, 565–66, 84 S. Ct. 1362, 1383 (1964)).

42.     The right to vote is "fundamental," and once that right "is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment." *Bush v. Gore*, 531 U.S. 98, 104–05, 121 S. Ct. 525, 530 (2000) (quoting *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 665, 86 S. Ct. 1079, 1081 (1966)); *see also Raleigh Wake Citizens Ass'n*, 2016 WL 3568147, at *1.

43.     The desire on the part of the party in power to gain a partisan advantage and to "harm a politically [weak or] unpopular group" by gerrymandering congressional districts is not "a *legitimate* governmental interest." *United States Dep't of Agric. v.*

22

*Moreno*, 413 U.S. 528, 534, 93 S. Ct. 2821, 2826 (1973) (emphasis added); *see also City of Cleburne v. Cleburne Living Ctrs.*, 473 U.S. 432, 446–47, 105 S. Ct. 3249, 3258 (1985).

44.    The admitted, primary, and predominant objective of the 2016 Plan was to deprive the NCDP and Democratic voters of fair and effective representation and to perpetuate the Republican majority's ten-three (10-3) partisan advantage created by the 2011 Plan (and thereby entrench the Republican Party's majority in the U.S. Congress). The 2016 Plan achieves this objective by drawing congressional districts that discriminate in favor of the Republican Party and Republican voters and against the NCDP and Democratic voters by systematically making it more difficult for the NCDP and Democratic voters to elect a candidate of their choice in ten of North Carolina's thirteen congressional districts.

45.    The 2016 Plan as a whole, and each of the thirteen individual districts, are subject to strict scrutiny.  They cannot be justified by any legitimate state interest of compelling importance that could not be achieved by a more carefully drawn plan or that made it necessary to discriminate against the NCDP and Democratic voters.

## COUNT THREE

46.    The facts alleged in paragraphs 1-24 are hereby incorporated by reference as allegations of Count Three of the complaint.

47.     The 2016 Congressional Redistricting Plan and each of the thirteen individual districts created by that Plan violate Article I, § 2 of the U.S. Constitution, are therefore invalid, and should be enjoined.

48.     In the Great Compromise, the Framers of the U.S. Constitution agreed to allow the state legislatures to elect members of the Senate from their respective states, U.S. Const., Art. I, § 3, on the condition that members of the House of Representatives be elected by a popular vote of the people in each state, whose qualifications to vote as "electors" were to be the same as the qualifications to vote for the most numerous house of each state's legislature. *Id.* § 2.

49.     Instead of allowing the "people of the several states" in each district to make that decision for themselves in an open and fair election that has not been rigged by the state legislature, the 2016 Plan violates Article I, § 2 by allowing the majority party in a state legislature to choose the members of the House of Representatives elected to represent each district.

**COUNT FOUR**

50.     The facts alleged in paragraphs 1-24 above are hereby incorporated by reference as allegations of Count Four of the complaint.

51.     The 2016 Congressional Redistricting Plan and each of the thirteen individual districts created by that Plan are invalid because they were adopted in excess of the authority granted to the North Carolina General Assembly by Article I, § 4 of the U.S. Constitution to determine "the Times, Places and Manner of holding Elections" of

24

members of the House of Representatives, which is the sole source of a state's authority to draw congressional district lines.

52.     The authority granted by the Constitution to the legislatures of the states to "prescribe" the "Times, Places and Manner" of elections of members of the House of Representatives is not unlimited.  It only allows the legislatures to adopt *procedural rules* for the conduct of congressional elections, and does not include the power to *dictate or control the electoral outcomes of those elections.  See Cook v. Gralike,* 531 U.S. 510, 523, 121 S. Ct. 1029, 1038 (2001); *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 808–10, 115 S. Ct. 1842, 1857–58 (1995).

53.     The 2016 Plan is a naked attempt by the majority party in a state legislature to dictate and control the outcome of the general election for members of the House of Representatives by drawing the district lines to virtually guarantee the election of the majority party's candidates in ten of the thirteen districts.  The 2016 Plan makes it more difficult, if not impossible, for Democratic candidates to be elected from those districts and, conversely, to limit the number of Democrats elected to Congress by putting supermajorities of Democratic voters in the three remaining districts (the First, Fourth and Twelfth Congressional Districts).

54.     The Republican majority exceeded its constitutional authority by gerrymandering North Carolina's thirteen congressional districts for partisan purposes to give the Republican Party a 10-3 seat advantage over the NCDP, and the 2016 North Carolina Congressional Redistricting Plan is thus *ultra vires* and should be enjoined.

## INJURY AND IRREPARABLE HARM

55. The defendants' violations of the Constitution have caused a direct, concrete, and particularized injury to Common Cause and its Democratic members in North Carolina, to the Democratic Party, to Democratic voters in North Carolina, to the individual Democratic-voter plaintiffs and to the individual Republican-voter plaintiff. Their injuries include, *inter alia*, the following:

(a) The 2016 Plan has made it more difficult, if not impossible, for a Democratic candidate to be elected in the general election to the House of Representatives from each of the ten districts that have been gerrymandered to have safe Republican majorities;

(b) The 2016 Plan has injured the Democratic-voter plaintiffs and other Democratic voters who reside in congressional districts that formerly had Democratic majorities during the 2002–2010 election cycles. The 2016 Plan dilutes or nullifies the effectiveness of their votes and deprives them of the opportunity to elect the candidate of their choice by cracking and disbursing them among one of the ten districts with safe Republican majorities in which their votes in favor of a Democratic candidate no longer matter and cannot affect the outcome of the general election;

(c) The 2016 plan also has injured Democratic voters who have been packed into three districts gerrymandered to contain large Democratic supermajorities, where their votes in favor of the Democratic candidate in the general election in excess of the

majority required to enable them to elect the Democratic candidate of their choice have been and will be largely wasted and have no more effect than if they had not voted.

(d)     The 2016 plan has further injured Republican voters assigned to CDs 1, 4 and 13 by diluting or nullifying the effectiveness of their votes and depriving them of the opportunity to elect the candidate of their choice.

## PRAYER FOR RELIEF

Wherefore the plaintiffs respectfully pray that:

(a)     a three-judge district court be convened to hear and determine the plaintiffs' claims that the 2016 North Carolina Congressional Redistricting statute, N.C. Sess. Law. 2016-1, adopted on February 19, 2016, is unconstitutional;

(b)     the Court grant a declaratory judgment pursuant to 28 U.S.C. § 2201 that the 2016 North Carolina Congressional Redistricting statute, and each of the thirteen districts created by that statute, are unconstitutional partisan gerrymanders;

(c)     the Court enter a preliminary and a permanent injunction prohibiting the defendants from enforcing or attempting to enforce the 2016 North Carolina Congressional Redistricting statute, or from conducting primary or general elections for members of the House of Representatives under its provisions;

(d)     the Court enjoin the North Carolina General Assembly from creating any future legislative districts with the purpose or effect of burdening or penalizing an identifiable group, a political party, or individual voters based on their political beliefs,

27

political party membership, registration, affiliations or political activities, or voting histories;

(e) the Court also enjoin the North Carolina General Assembly from using "political data" in any future redistricting process to burden or penalize an identifiable group, a political party, or individual voters based on their political beliefs, political-party membership, registration, affiliations or political activities, or voting histories;

(f) the Court award plaintiffs their reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

(g) the Court grant plaintiffs such other and further relief as may be just and equitable.

Respectfully submitted, this 7th day of September, 2016.

/s/ Emmet J. Bondurant
Emmet J. Bondurant
Georgia Bar No. 066900
Jason J. Carter
Georgia Bar No. 141669
Benjamin W. Thorpe
Georgia Bar No. 874911
BONDURANT, MIXSON & ELMORE, LLP
1201 W. Peachtree Street, NW, Suite 3900
Atlanta, Georgia 30309
Telephone (404) 881-4100
Facsimile (404) 881-4111
bondurant@bmelaw.com
carter@bmelaw.com
bthorpe@bmelaw.com

/s/ Gregory L. Diskant
Gregory L. Diskant
New York Bar No. 1047240
Susan Millenky
New York Bar No. 5045570
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 336-2000
Facsimile:  (212) 336-2222
gldiskant@pbwt.com
smillenky@pbwt.com

/s/ Edwin M. Speas, Jr.
Edwin M. Speas, Jr.
North Carolina Bar No. 4112
Caroline P. Mackie
North Carolina Bar No. 41512
POYNER SPRUILL LLP
301 Fayetteville Street, Suite 1900
Raleigh, North Carolina  27601
espeas@poynerspruill.com
cmackie@poynerspruill.com

***Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record.

I further certify that I have this day served a copy of the foregoing via email and by depositing a copy thereof in an envelope bearing sufficient postage in the United States mail, addressed to the following person at the following address which is the last address known to me:

James Bernier, Jr.                          Robert C. Stephens
Alexander McClure Peters                     General Counsel
N.C. Dept. of Justice                        Office of the Governor of North Carolina
P.O. Box 629                                 116 West Jones Street
Raleigh NC  27602                            Raleigh, NC  27603
jbernier@ncdoj.gov                           bob.stephens@nc.gov
apeters@ncdoj.gov                            *(Courtesy Copy Only)*

This the 7th day of September, 2016.

/s/ Edwin M. Speas, Jr.
Edwin M. Speas, Jr.