IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
NO. 1:16-CV-1026

| | |
|---|---|
| COMMON CAUSE, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) |
| ROBERT A. RUCHO, in his official capacity as Chairman of the North Carolina Senate Redistricting Committee for the 2016 Extra Session and Co-Chairman of the Joint Select Committee on Congressional Redistricting, *et al.*, | ) **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| Defendants. | ) |

## INTRODUCTION

Plaintiffs' claims for political gerrymandering are not supported by any prior decision by the Supreme Court and are even foreclosed under the analyses of the plurality, concurring and dissenting opinions in the Court's most recent ruling on political gerrymanders, *Vieth v. Jubelirer*, 541 U.S. 267 (2004). Moreover, identical claims alleged by plaintiffs who challenged North Carolina's 1992 Congressional Plan were rejected by a prior North Carolina three-judge court whose decision was summarily affirmed by the Supreme Court. *Pope v. Blue* 809 F. Supp. 392 (W.D.N.C.), *aff'd*, 506 U.S. 801 (1992). Similar claims challenging the 2016 Congressional Plan have already been rejected by another North Carolina three-judge court. *Harris v. McCrory*, No. 1:13-CV-949, 2016 WL 3129213, *1 (M.D.N.C. Jun. 2, 2016). For these reasons, and as explained below, Plaintiffs' Amended Complaint ("Amd. Compl.") does not state a claim

upon which relief can be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## PLAINTIFFS' ALLEGATIONS

Plaintiffs in this case include Common Cause, the North Carolina Democratic Party, and fourteen individual plaintiffs. At least one of the individual plaintiffs resides in each of the Congressional districts enacted by the General Assembly in 2016. Amd. Compl. ¶ 2.

Plaintiffs correctly allege that that a Republican-controlled legislature enacted new congressional districts for North Carolina in 2011 ("2011 Plan"). Amd. Compl. ¶ 7. Plaintiffs also correctly allege that on February 5, 2016, a three-judge court found that Congressional Districts 1 and 12 ("CD 1" and "CD 12") in the 2011 Plan constitute racial gerrymanders and enjoined any further elections under the 2011 Plan. *Harris v. McCrory*, 159 F. Supp. 3d 600 (2016) (ordering the State to enact new plans no later than Feb. 19, 2016), *appeal docketed*, No. 15-1262 (U.S. Apr. 11, 2016). Amd. Compl. ¶ 9.

Likewise, plaintiffs correctly allege that on February 19, 2016, the North Carolina General Assembly enacted a 2016 Congressional Plan in accordance with the deadline set by the three-judge court in *Harris* ("2016 Plan"). Amd. Compl. ¶ 21. Plaintiffs do not acknowledge that the plaintiffs in the *Harris* litigation filed objections to the 2016 Plan and alleged that the plan and individual districts were unlawful because of political gerrymandering. These objections were denied by the three-judge Court. *See Harris v. McCrory*, No. 1:13-CV-949, 2016 WL 3129213, *1 (M.D.N.C. Jun. 2, 2016).

Plaintiffs allege four claims in their Amended Complaint. In count one, they allege that the 2016 Plan and individual districts violate the First Amendment rights of members of Common Cause and of Democratic voters. Amd. Compl. ¶¶ 25-38. In count two, plaintiffs allege that the 2016 Plan and each district in that plan violate the Equal Protection Clause of the Fourteenth Amendment. Amd. Compl. ¶¶ 39-45. In count three, plaintiffs allege that the 2016 Plan and each district in that plan violate Article I, Section 2 of the United States Constitution. Amd. Compl. ¶¶ 46-49. Finally, in count four, plaintiffs allege that the 2016 Plan and each district in that plan violate Article I, Section 4 of the United States Constitution. Amd. Compl. ¶¶ 51-54.

Plaintiffs' Amended Complaint relies upon the percentage of Democratic and Republican votes for elections to Congress in North Carolina from 2002 through 2014 compared to the number of Democratic and Republican Representatives elected in each of these elections. Amd. Compl. ¶¶ 5-8. Plaintiffs allege that the 2016 Plan is not fair because the number of Republican and Democratic candidates plaintiffs allege are likely to be elected is not proportional to the number of registered Republicans and registered Democrats in North Carolina. Amd. Compl. ¶¶ 23-24. Plaintiffs also allege that criteria for drawing congressional districts was passed by a "party line vote" and included a criteria that the General Assembly should take reasonable steps to maintain the partisan balance in the North Carolina congressional delegation, and that the General Assembly considered election results when enacting the 2016 Plan. Finally, plaintiffs allege that one of the sponsors of the 2016 Plan stated that the then-proposed 2016 Plan would give a partisan advantage to ten Republicans and three Democrats and that it was not possible

3

to draw a map with 11 Republican districts and 2 Democrat Districts. Amd. Compl. ¶¶ 10-17.

Attached to plaintiffs' Amended Complaint as Exhibit B is a copy of the complete list of criteria followed by the sponsors of the 2016 Plan. These criteria, which were adopted by the House and Senate redistricting committees, include equal population for each district, contiguity of territory in each district, the use of political data, reasonable efforts to maintain the current partisan balance of the congressional delegations, rejection of the historical configuration of CD 12 as originally enacted in 1997, encouragement of district compactness by avoiding the divisions of counties or precincts, and consideration of the residences of incumbents. Amd. Compl., Ex. B.

Plaintiffs' Amended Complaint does not allege that the General Assembly failed to follow traditional districting criteria in its enactment of the 2016 Plan. Plaintiffs admit that only 13 counties are divided into separate congressional districts. Amd. Compl. ¶ 36. Plaintiffs do not allege that an unreasonable number of precincts were divided. Plaintiffs do not allege that any single district is not compact. In fact, there are no allegations in the First Amended Complaint explaining why any specific single district violates the law in any respect, other than plaintiffs' primary contention that the 2016 Plan unfairly dilutes the statewide voting strength of Democratic voters or members of Common Cause.

# ARGUMENT

## 1. Plaintiffs' Amended Complaint must be dismissed based upon the decision by the three-judge court in *Pope v. Blue*.

In *Pope v. Blue*, the three-judge court was confronted by a mirror image of the facts alleged by the plaintiffs in this case. The plaintiffs in *Pope* challenged a congressional plan enacted in 1992 by a Democratic-controlled General Assembly on the grounds that the plan and individual districts constituted illegal political gerrymanders. The *Pope* plaintiffs alleged claims under the Fourteenth and First Amendments, along with a claim that the 1992 Congressional Plan ("1992 Plan") violated Article I, Section 2, of the United States Constitution. *Id.* at 395, 397-98. In support of their claims, the *Pope* plaintiffs alleged that the effect of the 1992 Plan would result in the election of a disproportionate number of Democratic congressmen, that the 1992 Plan unnecessarily divided too many counties to create noncompact districts, and that the configurations of districts in the 1992 Plan were "unusual and egregious." *Id.* at 394-95, 397 n. 4, 399.

In granting the *Pope* defendants' motion to dismiss, the three-judge court held that the *Pope* plaintiffs' claims under the First Amendment were "coextensive" with their equal protection claims. *Id.* at 398 (*citing Washington v. Findley*, 664 F.2d 913, 927-28 (4th Cir. 1980)). More specifically, the court ruled that the First Amendment "offers no protection of voting rights beyond that afforded by the Fourteenth . . . Amendment." *Id.*

The three-judge court then relied upon the Supreme Court's decision in *Davis v. Bandemer*, 478 U.S. 109 (1986), to evaluate the plaintiffs' claims under the Equal Protection Clause. The *Pope* court noted that alleged political gerrymandering cannot be

established simply because "a particular apportionment scheme makes it more difficult for a particular group in a particular district to elect representatives of its choice." *Id*. at 396 (*citing Davis*, 478 U.S. at 131). Instead, to establish a political gerrymandering claim, plaintiffs must prove that they have "essentially been shut out of the political process." *Id*. (*citing Davis*, 478 U.S. at 139). Plaintiffs must prove that an "electoral system is arranged in a manner that will consistently degrade a voter's or a group of voters' influence on the political process at a whole." *Id*. (*citing Davis*, 478 U.S. at 132). Relevant evidence would include "interference in the 'registration, organizing, voting, fundraising, or campaigning' of the purportedly disadvantaged group." *Id*. at 396 (*citing Badham v. Eu*, 694 F.Supp. 664, 670 (N.D. Cal. 1998), *aff'd mem.*, 488 U.S. 1024 (1989)). Moreover, to the extent election results might be relevant, "the results of a single election [are] insufficient to establish 'politically' discriminatory effect." *Id*.

In dismissing the *Pope* plaintiffs' complaint, the court held that plaintiffs had failed to allege facts that would prove, if established, that the 1992 Plan had caused them to be "shut out of the political process." *Id*. at 397. The *Pope* court noted that a number of "'safe' Republican districts had been created by the [1992] Plan." *Id*. The court also noted that individuals who vote for a losing candidate are "usually deemed to be adequately represented by the winning candidates and to have as much opportunity to influence that candidate or other voters in the district." *Id*. (*citing Davis*, 478 U.S. at 132). Additionally, the court observed that the *Pope* plaintiffs had not alleged that "anyone has ever interfered with [their] registration, organizing, voting, fund raising, or campaigning." *Id*. (*citing Badham*, 694 F.Supp. at 670). Finally, the court did not credit

6

as relevant allegations by the *Pope* plaintiffs that their political party was excluded from the redistricting process. *Id*. at 397.

In short, all of the allegations made by the plaintiffs in this case mirror the allegations by the *Pope* plaintiffs. Like the *Pope* plaintiffs, the plaintiffs here admit that the 2016 Plan creates three safe Democratic districts. As in *Pope*, plaintiffs here do not allege that they are not adequately represented in districts that may be won by Republican candidates or that they have no ability to influence successful Republican candidates. Even if plaintiffs had made such allegations, they would be baseless. Further, while the plaintiffs here, like the *Pope* plaintiffs, allege that Democrats were excluded from the political process, there are no allegations that anyone has interfered with plaintiffs' registration, organizing, voting, fund raising, or campaigning. In short, just like the plaintiffs in *Pope*, there are no allegations that plaintiffs have been "shut out" of the political process. *Id*. at 397.

The decision by the three-judge court in *Pope* is binding authority on this Court because it was summarily affirmed by the Supreme Court. *Id*. at 395 n.2. As explained by the *Pope* court, plaintiffs' claims in this case under the First Amendment, Article I, Section 2, or Article I, Section 4, are "coextensive" with their claims under the Fourteenth Amendment. Nothing has changed in the Supreme Court's jurisprudence on political gerrymanders since its decision in *Davis* or the three-judge court's decision in *Pope*. This Court should not find cognizable claims made against a Republican-controlled North Carolina General Assembly when dismissal of identical claims made

7

against a Democratic-controlled General Assembly were summarily affirmed by the Supreme Court.

> **2. Dismissal of plaintiffs' Amended Complaint is also mandated by decisions of the Supreme Court entered after its summary affirmation of the district court's opinion in *Pope v. Blue*.**

After its summary affirmation of the decision by the three-judge court in *Pope*, the Supreme Court has issued two other decisions dismissing claims of political gerrymandering. In one of these decisions, *League of United Latin American Citizens v. Perry*, 548 U.S. 399 (2006) ("*LULAC*"), a federal court had adopted a congressional plan for the State of Texas after Texas had been unable to enact a new plan following the 2000 Census. Thereafter, the political balance of the state's legislature changed and Texas enacted a congressional plan to replace the court-ordered plan. The plan enacted by the legislature allegedly unfairly favored members of the Republican Party. The Supreme Court in *LULAC* dismissed plaintiffs' claims for political gerrymandering. However, the decision in *LULAC* has little relevance here because no one is contending that North Carolina has replaced a court-ordered plan for political advantage.

The second Supreme Court decision on political gerrymanders, *Vieth, supra*, is directly relevant to the claims before this Court. Like the plaintiffs in this case, the *Vieth* plaintiffs alleged that the Republican legislature in Pennsylvania had engaged in political gerrymandering by enacting a plan that allowed Republican voters to elect a disproportionate number of legislative representatives. *Vieth*, 541 U.S. at 286-87. Based upon these allegations, plaintiffs alleged claims under the Fourteenth Amendment and Article I, Section 2, of the Constitution. A plurality of the Court concurred with the

8

district court's opinion that plaintiffs had failed to state a claim and affirmed the lower court's opinion dismissing plaintiffs' complaint. Of equal significance, all four of the dissenting Justices in *Vieth* published opinions which indicate that even the *Vieth* dissenters would vote to dismiss plaintiffs' claims in this case.

The four Justices constituting the *Vieth* plurality found that claims of political gerrymandering are not justiciable under the United States Constitution. *Vieth*, 541 U.S. at 270-306. Justice Kennedy concurred in the result but disagreed with the opinion of the plurality that politically gerrymandering claims were non-justiciable. However, Justice Kennedy did not say that politically gerrymandering claims are justiciable, only that he was not prepared at the time of the *Vieth* decision to agree with the majority's opinion that they are not. *Vieth*, 541 U.S. at 309 (Kennedy, J., concurring in result) ("There are, then, weighty arguments for holding cases like this non-justiciable; and these arguments may prevail in the long run."). Justice Kennedy observed that at some point the Court might find that the First Amendment provides a better framework for analyzing claims of political gerrymandering than the Fourteenth Amendment. *Id*. at 314-15. However, he did not offer a standard for applying the First Amendment to districting claims.

Four Justices filed dissenting opinions in *Vieth*. Three of the dissenting Justices opined that claims of political gerrymandering must be based on specific districts and that the Constitution does not recognize a claim based upon allegations that an entire plan constitutes an illegal gerrymander. *Vieth*, 541 U.S. at 327-28 (Stevens, J., dissenting);

9

*Vieth* 541 U.S. at 346-47 (Souter, Ginsburg, J.J., dissenting).[1] At least one of the dissenting Justices expressly noted that claims of political gerrymandering cannot be based upon allegations that a districting plan results in the election of a disproportionate number of candidates from one political party or another. *Vieth*, 541 U.S. at 338 (Stevens, J., dissenting). Justice Stevens also opined that a claim for political gerrymandering can survive a motion to dismiss only where there is "no neutral criterion" that can be identified "to justify the lines" and "if the only possible explanation for a district's bizarre shape is a naked desire to increase partisan strength . . . ." *Id.*, at 339. Similarly, Justices Souter and Ginsburg would consider claims for political gerrymanders only where plaintiffs can show for the district of their residence that the legislature "paid little or no heed to those traditional districting principles whose disregard can be shown straight forwardly; contiguity, compactness, respect for political subdivisions, and conformity with geographic features like rivers and mountains." *Vieth*, 541 U.S. at 347-48 (Souter, Ginsburg, J.J., dissenting).

Justice Breyer also entered a dissenting opinion in *Vieth*. Justice Breyer is the author of two decisions by the Supreme Court finding that partisan advantage is a legitimate and traditional districting principle: *Alabama*, 135 S. Ct. at 1270 and *Easley v. Cromartie*, 532 U.S. 234 (2000) ("*Cromartie II*"). Notwithstanding his opinion in *Alabama* and *Cromartie II*, in *Vieth*, Justice Breyer opined that a claim for political

---

[1] Requiring plaintiffs to focus on a specific district to prove a claim of political gerrymanders is consistent with the Supreme Court's test for racial gerrymanders which also requires district specific proof. *Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257, 1265 (2015) ("*Alabama*").

10

gerrymandering in cases might be recognized even where a legislature has followed traditional districting principles. In such a case, Justice Breyer opined that plaintiffs would be required to prove that a majority of the voters for Congressional elections had failed to elect a majority of the representatives in at least two general elections. *Vieth*, 541 U.S. at 366 (Breyer, J., dissenting).[2]

Regardless of how plaintiffs may attempt to cobble together all of the opinions in *Vieth*, it is undisputed that none of the Justices would agree that plaintiffs' allegations should survive a motion to dismiss. Four Justices believed that political gerrymandering claims are non-justiciable. While Justice Kennedy did not agree that it was time for the Court to reverse *Davis* and find political gerrymandering claims non-justiciable, he did not provide a standard for actually adjudicating any such claims. We do know that Justice Kennedy would not find plaintiffs' claims here justiciable because they are based upon the same allegations made by the *Vieth* plaintiffs, *i.e.*, that the 2016 Plan would result in the election of Republican candidates at a level that is disproportionate with the number of Republican voters. *Vieth*, 541 U.S. at 708 (there is no authority for the precept that a majority of the voters should be able to elect a majority of the Congressional delegation).

Three of the dissenting Justices in *Vieth* would not allow claims based upon statewide allegations but instead would require allegations showing how specific districts

---

[2] In his *Vieth* dissent, Justice Breyer appears to have not anticipated the position taken by the Court in an opinion written by him that plaintiffs must prove racial gerrymanders on a district basis. *Alabama, supra*. In light of his opinion in *Alabama*, defendants question whether Justice Breyer would now allow a statewide political gerrymandering claim given his contrary views on racial gerrymandering.

11

depart from traditional districting principles. Even if the opinions by these three dissenting Justices were to be adopted by the Court, plaintiffs' claims in this case would still be dismissed. The plaintiffs here focus on the alleged unfairness of Republican voters electing more than their proportionate share of congressional seats based upon the statewide totals for all Republican and Democratic voters in all congressional elections. There is not a single allegation in the Amended Complaint explaining how any specific district violates traditional districting principles, such as failing to follow county lines, dividing an exorbitant number of precincts, or being drawn in a manner that is not compact. These omissions in plaintiffs' Amended Complaint are fatal to their political gerrymandering claims even under the dissenting opinions authored by Justices Stevens, Souter, and Ginsburg.

Assuming Justice Breyer continues to believe, following the decision in *Alabama*, that plaintiffs may bring statewide claims for political gerrymandering, the reasoning of Justice Breyer's dissent also requires the dismissal of plaintiffs' Amended Complaint. Even under Justice Breyer's opinion, plans that follow traditional districting principles cannot be found unlawful until there are at least two elections under the challenged plan where a majority of all voters for congressional races fail to elect a majority of the candidates.[3] Plaintiffs cannot make allegations along these lines because no elections have been held under the 2016 Plan.

---

[3] As we have explained, eight of the nine Justices involved in the *Vieth* decision rejected the idea, expressed by Justice Breyer, that a statewide plan may be challenged for gerrymandering by comparing the percentage of voters who favor candidates from a

12

Thus, there is simply no basis for this Court to predict whether even a single Supreme Court Justice might agree that plaintiffs' Amended Complaint alleges claims upon which relief can be granted. In fact, plaintiffs can cite to no plurality opinion, no concurring opinion, or even a single dissenting opinion that provides a valid legal theory for their allegations. Plaintiffs cannot even cite a single case where a legislative or congressional plan or district has been found to be an illegal political gerrymander. This Court itself will have to invent a new theory for political gerrymanders for plaintiffs' claims to survive. If such a claim does exist, it should be first recognized by the Supreme Court and not by a lower court.

## CONCLUSION

For the foregoing reasons, plaintiffs' claims should be dismissed, pursuant to Rule 12(b)(6), Fed. R. Civ. P.

This 31st day of October, 2016.

---

specific political party versus the number of candidates from that party who were elected statewide.

OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.

/s/ Thomas A. Farr
Thomas A. Farr
N.C. State Bar No. 10871
Phillip J. Strach
N.C. State Bar No. 29456
thomas.farr@ogletreedeakins.com
phil.strach@ogletreedeakins.com
4208 Six Forks Road, Suite 1100
Raleigh, North Carolina 27609
Telephone: (919) 787-9700
Facsimile: (919) 783-9412

NORTH CAROLINA DEPARTMENT OF
JUSTICE

By: /s/ Alexander McC. Peters
Alexander McC. Peters
Senior Deputy Attorney General
N.C. State Bar No. 13654
apeters@ncdoj.gov
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
Telephone: (919) 716-6900
Facsimile: (919) 716-6763


*Counsel for Defendants*

14

# CERTIFICATE OF SERVICE

I, Thomas A. Farr, hereby certify that I have this day electronically filed the foregoing **Defendants' Memorandum in Support of Motion to Dismiss** with the Clerk of Court using the CM/ECF system which will provide electronic notification of the same to the following:

Edwin M. Speas, Jr.
Carolina P. Mackie
Poyner Spruill LLP
P.O. Box 1801 (27602-1801)
301 Fayetteville St., Suite 1900
Raleigh, NC  27601
espeas@poynerspruill.com
cmackie@poymerspruill.com
*Attorneys for Plaintiffs*

Emmet J. Bondurant
Jason J. Carter
Benjamin W. Thorpe
Bondurant, Mixson & Elmore, LLP
1201 W. Peachtree Street, NW, Suite 3900
Atlanta, Georgia 30309
bondurant@bmelaw.com
carter@bmelaw.com
bthorpe@bmelaw.com
*Attorneys for Plaintiffs*

Gregory L. Diskant
Susan Millenky
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036
gldiskant@pbwt.com
smillenky@pbwt.com
*Attorneys for Plaintiffs*

This the 31st day of October, 2016.

>OGLETREE, DEAKINS, NASH
>SMOAK & STEWART, P.C.
>
>/s/ Thomas A. Farr
>Thomas A. Farr
>N.C. State Bar No. 10871
>4208 Six Forks Road, Suite 1100
>Raleigh, NC 27609
>Telephone: 919.787.9700
>Facsimile: 919.783.9412
>thomas.farr@odnss.com
>*Co-Counsel for Defendants*

26702414.1