# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| COMMON CAUSE, *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION<br>NO. 1:16-CV-1026-WO-JEP |
| ROBERT A. RUCHO, in his official capacity as Chairman of the North Carolina Senate Redistricting Committee for the 2016 Extra Session and Co-Chairman of the Joint Select Committee on Congressional Redistricting, *et al.*, | ) ) ) ) ) ) ) ) ) ) | THREE-JUDGE COURT |
| Defendants. | ) | |

| | | |
|---|---|---|
| League of Women Voters of North Carolina, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | CIVIL ACTION<br>NO. 1:16-CV-1164-WO-JEP |
| Robert A. Rucho, in his official capacity as Chairman of the North Carolina Senate Redistricting Committee for the 2016 Extra Session and Co-Chairman of the 2016 Joint Select Committee on Congressional Redistricting, *et al.*, | ) ) ) ) ) ) ) ) ) | THREE JUDGE COURT |
| Defendants. | ) ) | |

**LEGISLATIVE DEFENDANTS' EMERGENCY MOTION TO STAY PENDING
SUPREME COURT REVIEW AND REQUEST FOR EXPEDITED RULING**

1

Legislative defendants respectfully move this Court to stay its Memorandum Opinion and associated Order ("Order") ordering the North Carolina General Assembly to enact a new congressional plan by January 24, 2018 and appointing a special master to draw new congressional districts in the meantime. (D.E. 118) Because of the exigent nature of the circumstances, including that the 2018 filing period for congressional offices is just a few weeks away, legislative defendants request a ruling on this motion today so that legislative defendants can immediately seek relief in the United States Supreme Court if necessary. In support of this motion, legislative defendants show the Court:

1. In 2011, North Carolina's legislature enacted new congressional districts for North Carolina ("2011 Plan"). *Common Cause* Amended Complaint ("Am. Compl.") ¶ 7. On February 5, 2016, a three-judge court found that Congressional Districts ("CD") 1 and 12 in the 2011 Plan were racial gerrymanders and enjoined any further elections under the 2011 Plan. *Harris v. McCrory*, 159 F. Supp. 3d 600 (2016) (ordering the State to enact new plans no later than Feb. 19, 2016), *appeal docketed*, No. 15-1262 (U.S. Apr. 11, 2016). Am. Compl. ¶ 9.

2. In response, the legislature enacted a new congressional plan on February 19, 2016 in accordance with the deadline set by the three-judge court in *Harris* ("2016 Plan"). Am. Compl. ¶ 21. The plaintiffs in the *Harris* litigation subsequently filed objections to the 2016 Plan and alleged that the plan was unlawful because of political gerrymandering. These objections were overruled by the three-judge court. *See Harris v. McCrory*, No. 1:13-CV-949, 2016 WL 3129213, *1 (M.D.N.C. Jun. 2, 2016).

3. On August 5, 2016, the plaintiffs in *Common Cause* filed a complaint alleging that the 2016 Plan is an unconstitutional partisan gerrymander. In particular, the *Common Cause* plaintiffs alleged that the 2016 Plan violated the First and Fourteenth Amendments and Articles I, Sections 2 and 4 of the United States Constitution. The complaint in *League of Women Voters* was filed on September 22, 2016 and included the same allegations regarding the 2016 Plan and sought the same remedies as in *Common Cause*.

4. These consolidated matters were tried in October 2017. On January 9, 2018, this Court entered the Order.

5. Candidate filing for the 2018 congressional elections is scheduled to begin February 12, 2018.

6. The Order provides the General Assembly until January 24, 2018 to enact new congressional districts in response to the Court's Order. In the meantime, the Order states that the Court will appoint a special master to draw congressional districts in the event the legislature does not act. Under the Order, any new plan enacted by the legislature must be filed with the Court by January 29, 2018. Objections may be filed to the new plan by February 5, 2018, and the legislative defendants may respond to any such objections by February 12, 2018. (D.E. 118 at 190) Thus, the filing period is scheduled to begin prior to the briefing being completed on any new enacted plan. The Order does not provide any briefing schedule or timetable for review or approval of any plan drawn by a special master.

7. While this matter was pending, the United States Supreme Court took action in two cases that will significantly impact the Court's ruling in this case. First, on June 19, 2017, the Supreme Court agreed to hear the case of *Gill v. Whitford*, Dkts. 16-1161; 16A1149 ("*Whitford*") on the merits. *Whitford* involves the same claims before the Court in this case and will ultimately resolve currently unanswered questions regarding the justiciability, legal standards, and appropriate remedy in political gerrymandering claims. The Supreme Court also stayed the *Whitford* court's order directing Wisconsin to enact a remedial plan by November 1, 2017 and notified the parties that it would postpone consideration of its jurisdiction over the plaintiffs' claims in *Whitford* until the hearing on the merits. The Supreme Court heard oral arguments in *Whitford* on October 3, 2017, and could issue its ruling at any time.

8. Second, on December 8, 2017, the Supreme Court agreed to hear *Benisek v. Lamone*, __ F.Supp.3d __, No. JKB-13-3233, 2017 WL 3642928 (D. Md. Aug. 24, 2017), *appeal docketed*, __ S. Ct. __, 2017 WL 3839474 (S. Ct. Dec. 8, 2017). *Benisek* is a partisan gerrymandering challenge to a congressional district in Maryland based on a First Amendment theory. *Benisek*, 2017 WL 3642928, at *2 (D. Md. Aug. 24, 2017). In accepting the case, the Supreme Court, as in *Whitford*, postponed the question of jurisdiction to the hearing on the merits. Dkt. 17-333.

9. The same partisan gerrymandering legal theories addressed by this Court in its Order are alleged or addressed in *Whitford* and/or *Benisek*. Thus, there is an extremely high likelihood that the Supreme Court's decision in one or both of those cases will require this Court to revisit the Order as the Order is likely to be vacated and

4

remanded by the Supreme Court. *See, e.g., Kirksey v. City of Jackson, Miss.*, 625 F.2d 21, 22 (1980) ("We have many times held that fact findings that were made under the spell of legal principles, which were either improper or since then declared to be improper, really can't be credited one way or the other.") (vacating and remanding in light of new Supreme Court precedent); *Coastal Lumber Co. v. N.L.R.B.*, 24 Fed. Appx. 120 (2001) (ordering district court to reconsider case in light of new Supreme Court case issued while appeal was pending).

10. Indeed, there may be more reason than what was present in *Whitford* to think the Supreme Court will stay the Order here. In *Whitford*, the district court gave the Wisconsin legislature nine months from the date of its remedial order to enact new plans, until November 1, 2017. Here, this Court has given the legislature a mere two weeks to enact a new congressional plan with candidate filing only weeks away. Additionally, the *Whitford* district court took pains to note that the Wisconsin mapdrawers had "produced many alternate maps, some of which may conform to constitutional standards," which it thought would "significantly assuage the task now before them." *Whitford*, 2017 WL 383360, at *2. There is no evidence or indication that any such alternate maps exist here. Thus, there is every reason to expect that the circumstances here will draw a stay from the Supreme Court.

11. More importantly, this Court should stay the Order under the Supreme Court's doctrine from *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). Under the schedule set forth by the Court in the Order, it is not possible for the Court to review any new congressional districting plan enacted by the legislature prior to the beginning of the

5

filing period. Candidates for congressional offices under the 2016 Plan have been planning campaigns under those districts for months if not over a year. Voters are already familiar with the 2016 Plan having voted once already for candidates from those districts. This Court's Order requires at least one new plan (one enacted by the legislature) if not two new plans (a plan drawn by a special master). The introduction of multiple congressional plans in addition to the 2016 Plan will create mass confusion for voters and candidates right before the opening of the critical filing period. Some candidates who would otherwise run for Congress may opt out because of the confusion. Voters may ultimately fail to participate not understanding which plan is in place. This is not a theoretical concern. The Supreme Court noted that lower courts should be mindful of the "considerations specific to election cases" and avoid the very real risks that conflicting court orders changing election rules close to an election may "result in voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4-5.

12. While legislative defendants believe this Court's Order will be reversed by the Supreme Court on appeal, mandatory injunctions of statewide election laws, including redistricting plans, issued by lower courts at the later stages of an election cycle have consistently been stayed. *See, e.g., Hunt v. Cromartie*, 529 U. S. 1014 (2000); *Voinovich v. Quilter*, 503 U.S. 979 (1992); *Wetherell v. DeGrandy*, 505 U.S. 1232 (1992); *Louisiana v. Hays*, 512 U.S. 1273 (1994); *Miller v. Johnson*, 512 U.S. 1283 (1994). The Supreme Court has also affirmed decisions by lower courts to permit elections under plans declared unlawful because they were not invalidated until late in the

6

election cycle. *Watkins v. Mabus*, 502 U.S. 952 (1991) (summarily affirming in relevant part *Watkins v. Mabus*, 771 F. Supp. 789, 801, 802-805 (S.D. Miss. 1991) (three judge court)); *Republican Party of Shelby County v. Dixon*, 429 U.S. 934 (1976) (summarily affirming *Dixon v. Hassler*, 412 F. Supp. 1036, 1038 (W.D. Tenn. 1976) (three-judge court)); *Growe v. Emison*, 507 U.S. 25, 35 (1993) (noting that elections must often be held under a legislatively enacted plan prior to any appellate review of that plan).

WHEREFORE, the Court should stay its Order in this case pending Supreme Court review.

Respectfully submitted this 11th day of January, 2018.

        OGLETREE, DEAKINS, NASH
        SMOAK & STEWART, P.C.

        /s/ Phillip J. Strach
        Phillip J. Strach
        N.C. State Bar No. 29456
        Michael D. McKnight
        N.C. State Bar No. 36932
        phil.strach@ogletreedeakins.com
        michael.mcknight@ogletreedeakins.com
        4208 Six Forks Road, Suite 1100
        Raleigh, North Carolina 27609
        Telephone: (919) 787-9700
        Facsimile: (919) 783-9412
        *Counsel for Legislative Defendants*

# CERTIFICATE OF SERVICE

I, Phillip J. Strach, hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification of the same to the following:

Edwin M. Speas, Jr.
Carolina P. Mackie
Poyner Spruill LLP
P.O. Box 1801 (27602-1801)
301 Fayetteville St., Suite 1900
Raleigh, NC 27601
espeas@poynerspruill.com
cmackie@poymerspruill.com
*Attorneys for Plaintiffs*

Emmet J. Bondurant
Jason J. Carter
Benjamin W. Thorpe
Bondurant, Mixson & Elmore, LLP
1201 W. Peachtree Street, NW, Suite 3900
Atlanta, Georgia 30309
bondurant@bmelaw.com
carter@bmelaw.com
bthorpe@bmelaw.com
*Attorneys for Plaintiffs*

Gregory L. Diskant
Susan Millenky
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036
gldiskant@pbwt.com
smillenky@pbwt.com
*Attorneys for Plaintiffs*

Alexander McC. Peters
Senior Deputy Attorney General
apeters@ncdoj.gov
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602

This the 11th day of January, 2018.

OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.

/s/ Phillip J. Strach

32587252.1