| | |
|---|---|
| COMMON CAUSE, *et al.*, | |
| PLAINTIFFS, | |
| v. | CIVIL ACTION NO. 1:16-CV-1026-WO-JEP |
| ROBERT A. RUCHO, in his official capacity as Chairman of the North Carolina Senate Redistricting Committee for the 2016 Extra Session and Co-Chairman of the Joint Select Committee on Congressional Redistricting, *et al.*, | THREE-JUDGE COURT |
| DEFENDANTS. | |
| | |
| LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA, *et al.,* | |
| PLAINTIFFS, | |
| v. | CIVIL ACTION NO. 1:16-CV-1164-WO-JEP |
| ROBERT A. RUCHO, in his official capacity as Chairman of the North Carolina Senate Redistricting Committee for the 2016 Extra Session and Co-Chairman of the 2016 Joint Select Committee on Congressional Redistricting, *et al.,* | THREE-JUDGE COURT |
| DEFENDANTS. | |

**PLAINTIFFS' JOINT BRIEF IN OPPOSITION TO LEGISLATIVE DEFENDANTS' EMERGENCY MOTION TO STAY PENDING SUPREME COURT REVIEW AND REQUEST FOR EXPEDITED RULING**

Legislative Defendants seek a stay of the Court's January 9, 2018 Memorandum Opinion and Order (the "Order"), ECF No. 118—which invalidated North Carolina's 2016 congressional plan (the "2016 Plan")—pending Supreme Court review.[1] Leg. Defs.' Emerg. Mot. to Stay Pending S. Ct. Rev. & Request for Exp. Rul'g (hereinafter the "Motion"), Jan. 11, 2018, ECF No. 119. Pursuant to Local Rule 7.2 and the Court's January 11, 2018 order setting the deadline for responsive briefing, ECF No. 120, the Plaintiffs in these consolidated cases, by and through their undersigned counsel, submit the following response brief in opposition to the Motion.

## INTRODUCTION

A stay is an exercise of judicial discretion. *See Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 125 (4th Cir. 1983) ("[F]ederal district courts possess the ability to, under their discretion, stay proceedings before them when the interests of equity so require."). Well-settled factors bear on the exercise of that discretion where an applicant seeks a stay pending appellate review. At no point, however, does Legislative Defendants' Motion address (or even cite) these factors. Rather than weigh their likelihood of success on appeal or acknowledge the possibility of ongoing constitutional harm to Plaintiffs, Legislative Defendants focus their attention—or perhaps their speculation—on other cases now before the Supreme Court.

---

[1] For clarity, Plaintiffs' citations to ECF document numbers throughout this jointly-filed brief refer to the document numbers as they appear in *Common Cause et al. v. Rucho et al.*, No. 1:16-CV-1026.

The Court has heard—and rejected—all of these arguments already. On June 26, 2017 Legislative Defendants sought a stay of proceedings pending the Supreme Court's decision in *Gill v. Whitford*, No. 16-1611 (U.S. 2017), a challenge to Wisconsin's state legislative districts. ECF No. 74. In support of that motion, Legislative Defendants presented nearly identical arguments to those they now offer regarding *Gill* and the second partisan gerrymandering case in which the Supreme Court will hear argument this term—*Benisek v. Lamone*, No. 17-333 (U.S. 2017), which concerns a single Maryland district, focuses its claims on the First Amendment, and is before the Supreme Court on the denial of a preliminary injunction sought by plaintiffs in that case.

Legislative Defendants choose to ignore the Court's disposition of their earlier-requested stay and the balancing of equities this Court has *already performed* regarding the potential impact of the pending Supreme Court decisions in those cases. The stay was denied, ECF No. 85, and the Court's accompanying memorandum opinion rejected precisely those arguments Legislative Defendants now seek to resurrect. First, the Court devoted several pages to refuting Legislative Defendants' insistence that the *Whitford* result necessarily controls the outcome of these cases. *See* ECF No. 87, at 9-16. Second, Legislative Defendants' latest stay motion assumes—with no discernible reasoning—that *Whitford* and *Benisek*, once decided, will necessarily upset the entire framework on which this Court has based nearly 200 pages of remarkably thorough findings of facts and conclusions of law.

Legislative Defendants' assumption does not follow from the range of possibilities available to the Supreme Court in resolving the Wisconsin and Maryland cases. Should one or both of those cases result in victory for the plaintiffs, there is no doubt the result here would stand. The evidence—extensively catalogued in the Order—is simply overwhelming. *See*, *e.g.*, Order, ECF No. 118, at 86-114 (proof of discriminatory intent, including explicit drafting criteria, Legislative Defendants' repeated statements, and two credible and compelling expert analyses), 120-144 (proof of discriminatory effect, evaluated in four separate categories, including a credible and compelling expert analysis of the plan's extreme and durable partisan asymmetry), 146-152 (evidence rebutting Defendants' asserted explanations of Democratic clustering and incumbent protection as explaining partisan results), 166-168 (proof of burden on political speech and associational rights for First Amendment claim), 180, 186-87 (factual findings relevant to Article I claims).

Such extensive evidence may prove sufficient to invalidate North Carolina's 2016 Plan *even if* the Supreme Court chooses to adopt a standard under which the Wisconsin and/or Maryland claims would fail. The facts of this case—from history, to intent, to effect—are glaring and extreme by <u>any</u> standard. Uncertainty as to what exact outcome will occur in other litigation does not warrant failing to secure a timely remedy here. *See Personhuballah v. Alcorn*, 155 F. Supp. 3d 552, 560 (E.D. Va. 2016) (denying motion to stay remedy pending Supreme Court's direct review).

Finally, the Order itself considers and addresses any possible equitable questions raised by the timing of a remedy and shows that the Court made its own considered judgment in support of an immediate remedy. "[O]nce a State's . . . apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964). The Court's decision to "enjoin Defendants from conducting any further elections using the 2016 Plan" reflects the practical reality that "the 2018 general election remains many months away and the 2018 election cycle has not yet formally begun," ECF No. 118, at 187, as well as the paramount importance of securing—for the first time this decade—a constitutional congressional map for North Carolina's citizens.

As the Court wrote in denying Legislative Defendants' earlier stay motion,

> [i]f Plaintiffs prevail in this case, but the Court nonetheless lacks sufficient time to afford relief before the 2018 election, . . . North Carolinians would cast votes in congressional elections conducted under unconstitutional maps in 2012, 2014, 2016, *and* 2018. That a stay could leave North Carolinians represented by a congressional delegation elected under unconstitutional districting plans for nearly a decade would send a troubling message to state legislatures that there is little downside to engaging in unlawful districting practices because "the federal courts are powerless to effectively redress [voters'] grievances."

ECF No. 87, at 18. (quoting *Coal. for Educ. in Dist. One v. Bd. of Elections*, 370 F. Supp. 42, 58 (S.D.N.Y. 1974)). Before even reaching the well-settled factors for granting or denying a stay (a task Legislative Defendants do not even attempt), nothing presented in

Legislative Defendants' Motion justifies reconsideration of those well-reasoned conclusions.

## ARGUMENT

A stay pending appellate review "'is considered extraordinary relief for which the moving party bears a heavy burden,' and '[t]here is no authority to suggest that this type of relief is any less extraordinary or the burden any less exacting in the redistricting context.'" *Personhuballah*, 155 F. Supp. 3d at 558–59 (quoting *Larios v. Cox*, 305 F. Supp. 2d 1335, 1336 (N.D. Ga. 2004) (internal quotations omitted)).

Courts consider four factors when determining whether to issue a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *accord Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970).

Legislative Defendants attempt no substantive showing as to any of the factors, and can at best be said to comment on administrative inconvenience to the Defendants and—possibly—a tangential relationship to the public interest as a result of uncertainty as to the 2018 congressional districts. Even if the Court were to spot Legislative Defendants the full weight of those minimally-developed arguments, a stay would not be warranted. "The movant must establish each of these four elements in order to prevail." *Larios*, 305 F. Supp. 2d at 1336. This they have not attempted and could not show in any event.

## A. Defendants Cannot Establish a Likelihood of Success on the Merits.

"[D]efendants believe this Court's Order will be reversed by the Supreme Court on appeal . . . ." ECF No. 119, at 6. That is the extent of Legislative Defendants' discussion of the merits of their upcoming appeal. Obviously, that cannot establish a likelihood of success on the merits. Nor do Legislative Defendants present any claim that either the *Whitford* or *Benisek* cases are likely to be decided in favor of the defendants and thus may have some speculative effect on this case.

In reality, the facts here are so egregious and the 2016 Plan so extreme, the Plan would be unconstitutional under *any* standard for determining partisan gerrymandering. North Carolina is a textbook example of the fact pattern that Justice Kennedy outlined as problematic at the *Whitford* oral argument, of a "state statute [that] says all districts shall be designed…to conform with traditional districting principles, but the overriding concern is to increase… [seats] for party X." Transcript of *Whitford* Oral Argument at 19:6-20:7. So long as partisan gerrymandering remains justiciable, the unconstitutionality of the 2016 Plan is not at serious risk of reversal at the Supreme Court.

Further, given the procedural posture of this case, where the defendants have already filed a notice of appeal, ECF No. 121 and an emergency stay application with the Supreme Court, it makes little sense for this Court to stay a remedy in light of what the Supreme Court may or may not do in *Whitford* or *Benisek*. This Court's lengthy, well-reasoned Order defends itself. The factual findings—which will be reviewed for clear error—are

sufficient to support the Court's judgment under a variety of standards the Supreme Court could articulate and the conclusions of law are well-founded.[2]

**B. Granting a Stay Will Cause Irreparable Injury to Plaintiffs and Is Contrary to the Public Interest.**

There is no doubt that granting the requested stay would cause irreparable injury to Plaintiffs and the public. The right to vote is one of the most fundamental rights in our democratic system of government and is afforded special protection. *See Reynolds*, 377 U.S. at 554-55, 562; *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("Other rights, even the most basic, are illusory if the right to vote is undermined."). Accordingly, any illegal impediment on the right to vote is an irreparable injury. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976). As the Court noted in denying Legislative Defendants' prior stay motion, it is simply beyond dispute that Plaintiffs and other voters will suffer irreparable injury if they are forced to participate in a *fourth* congressional election under an unconstitutional redistricting plan. *See Personhuballah*, 155 F. Supp. 3d at 560 ("To force the Plaintiffs to vote again under the Enacted Plan even if the Supreme Court affirms our finding that the Plan is unconstitutional . . . constitutes irreparable harm to them, and to the other voters in the Third Congressional District."); *Larios*, 305 F. Supp. 2d at 1344 ("If the court permits a stay, thereby allowing the 2004 elections also to proceed pursuant to unconstitutional plans, the plaintiffs and many other citizens in Georgia will have been denied their constitutional rights in two of the five elections to be conducted under the 2000 census

---

[2] Legislative Defendants do not even assert—nor could they—that this Court's Article I holding is at issue in the Supreme Court's review of either *Whitford* or *Benisek*.

figures. . . . Accordingly, we find that the plaintiffs will be injured if a stay is granted because they will be subject to one more election cycle under unconstitutional plans.").

The public interest similarly weighs heavily in favor of denying the stay. "The public has an interest in having congressional representatives elected in accordance with the Constitution." *Personhuballah*, 155 F. Supp. 3d at 560; *see Reynolds*, 377 U.S. at 585 (courts should "tak[e] appropriate action to insure that no further elections are conducted under the invalid plan."). To grant the stay in these circumstances would only award Legislative Defendants "the fruits of victory for another election cycle" and "prolong the harm that plaintiffs have [already] suffered" under the Legislative Defendants' redistricting scheme. *Larios,* 305 F. at 1344; *Cousins v. McWherter*, 845 F. Supp. 525, 528 (E.D. Tenn. 1994).

### C. The Balance of Harms Warrants Denial of the Stay: The State's Administrative Inconvenience Does Not Outweigh the State's Ongoing Violation of the Constitutional Rights of Millions of North Carolina Citizens.

At no point in the Motion do Legislative Defendants actually assert irreparable harm. At most, they claim that North Carolina voters (and possibly even candidates) may be confused or uncertain regarding the effect of newly drawn districts. ECF No. 119 at 6. To be clear, the general election is a full ten months away.

Further, because the districts at issue are congressional districts, candidates need not live within the district in which they choose to run. Legislative Defendants' own experience with the 2016 Plan illustrates this. After the 2016 Plan was adopted, following the Court's decision in *Harris v. McCrory*, 159 F. Supp. 3d 600, 606–07 (M.D.N.C. 2016),

*aff'd sub nom. Cooper v. Harris*, 137 S. Ct. 1455 (2017), Congresswoman Adams (who was placed in the new District 13) and Congressman Holding (who was placed in District 4) chose to run in districts where they did not then reside. Both candidates won. Thus, recent evidence strongly suggests that neither candidates nor their supporters are harmed by a court taking action to ensure that elections are conducted under a constitutional plan.

As to voter confusion, Legislative Defendants offer the possibility that voters may "fail to participate" as a result of the confusion. ECF 119 at 6. Though no evidence appears to support the claim in this context, ample evidence supports the same conclusion where districts are drawn for partisan advantage. *See, e.g.*, Order, ECF 118 at 166-69 (evidence of chilling effect on political participation).[3] Regardless, courts may not neglect to remedy unconstitutional districts on the basis of this unsupported assertion.

Nor should the Court give weight to the Legislative Defendants' characterization of the timeline in which new districts must be drawn. A North Carolina state statute provides that, where a court strikes down a redistricting plan, the court may provide the General Assembly with as little as two weeks to "act to remedy any identified defects to its plan" and if the General Assembly fails to act, to "impose an interim districting plan for use in the next general election." N.C. GEN. STAT. ANN. § 120-2.4. Whatever administrative burdens arise in redistricting during that timeframe, they are burdens the North Carolina

---

[3] In addition, a finding that the 2016 Plan is unconstitutional but will remain in place for another election is likely to be just as, if not more, confusing for voters than the enactment of a remedy plan.

General Assembly saw fit to impose upon themselves. A federal court's use of a similar timeline cannot constitute irreparable injury.

North Carolina may incur additional cost and bear some additional burden in altering its election plans to remedy this constitutional violation, but these costs are incurred because of its own actions. More importantly, the irreparable *constitutional* injury Plaintiffs and all other North Carolinians will suffer if the stay is granted far outweighs any *administrative* injury North Carolina will suffer if the stay is denied. *See Buchanan v. Evans*, 439 U.S. 1360, 1361 (1978) (in considering a stay, the court "should balance the equities" to "determine on which side the risk of irreparable injury weighs most heavily") (citation omitted); *Conkright v. Frommert*, 556 U.S. 1401, 1403 (2009) ("[m]ere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay are not enough.") (Ginsburg, J. in chambers) (quotation marks omitted); *see also Cane v. Worcester Cty.,* 874 F. Supp. 695, 698 (D. Md. 1995) ("the time and expense of implementing a new system" is an "injury [that] is not irreparable"); *Johnson v. Mortham*, 926 F. Supp. 1540, 1542 (N.D. Fla. 1996) (having to redistrict is a "mere administrative inconvenience"). The 2018 election remains far enough away that a remedy may be secured and fully implemented by that time. The alternative is to require millions of North Carolinians to vote in yet another election under an unconstitutional plan.

## CONCLUSION

Legislative Defendants would choose to retain the 2016 Plan's congressional districts through the pendency of their appeal. They have not yet taken a position on

whether that will necessarily preclude relief for Plaintiffs in the 2018 elections, but every indication has been—and remains—that the Legislative Defendants will continue to seek delay in order to maintain the current districts. With this Motion, they seek the "fruits of victory whether or not [their] appeal has merit." *Personhuballah*, 155 F. Supp. 3d at 560.

Legislative Defendants cannot establish a likelihood of success on the merits. They have not even tried. Nor do the burdens they assert rise to the level of irreparable harm. Given the ongoing, irreparable constitutional harm to Plaintiffs and to voters across North Carolina as a result of the unconstitutional 2016 Plan, Plaintiffs respectfully submit that the Court should deny Defendants' motion and proceed with the remedial plan as outlined in the Court's Order.

Respectfully submitted, this 12th day of January, 2018.

/s/ Edwin M. Speas, Jr.
Edwin M. Speas, Jr.
North Carolina Bar No. 4112
Steven B. Epstein
North Carolina Bar No. 17396
Caroline P. Mackie
North Carolina Bar No. 41512
POYNER SPRUILL LLP
301 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
espeas@poynerspruill.com
sepstein@poynerspruill.com
cmackie@poynerspruill.com

/s/ Emmet J. Bondurant
Emmet J. Bondurant
Georgia Bar No. 066900
Jason J. Carter
Georgia Bar No. 141669

Benjamin W. Thorpe
Georgia Bar No. 874911
BONDURANT, MIXSON & ELMORE, LLP
1201 W. Peachtree Street, NW, Suite 3900
Atlanta, Georgia  30309
Telephone (404) 881-4100
Facsimile (404) 881-4111
bondurant@bmelaw.com
carter@bmelaw.com
bthorpe@bmelaw.com


/s/ Gregory L. Diskant
Gregory L. Diskant
New York Bar No. 1047240
Peter A. Nelson
New York Bar No. 4575684
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 336-2000
Facsimile:  (212) 336-2222
gldiskant@pbwt.com
pnelson@pbwt.com


*Counsel for the* **Common Cause** *Plaintiffs*


/s/ Allison J. Riggs
Allison J. Riggs (State Bar # 40028)
Jaclyn Maffetore (State Bar # 50849)
SOUTHERN COALITION FOR SOCIAL JUSTICE
1415 Highway 54, Suite 101
Durham, NC 27707
Telephone: 919-323-3380 ext. 115
Facsimile: 919-323-3942
allisonriggs@southerncoalition.org
jaclynmaffetore@southerncoalition.org


/s/ Paul M. Smith
Paul M. Smith
CAMPAIGN LEGAL CENTER
1411 K Street NW, Suite 1400
Washington, DC 20005

12

(202) 736-2200
psmith@campaignlegalcenter.org
/s/ Ruth M. Greenwood   
Ruth M. Greenwood
Annabelle E. Harless
CAMPAIGN LEGAL CENTER
73 W. Monroe St, Suite 322
Chicago, IL 60603
(312) 561-5508
rgreenwood@campaignlegalcenter.org
aharless@campaignlegalcenter.org

/s/ Nicholas O. Stephanopoulos   
Nicholas O. Stephanopoulos
UNIVERSITY OF CHICAGO LAW SCHOOL
1111 E 60th St.
Chicago, IL 60637
(773) 702-4226
nsteph@uchicago.edu

**Counsel for the League of Women Voters of North Carolina Plaintiffs**

13

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT**

The undersigned hereby certifies that the foregoing brief, exclusive of the case caption and certificate of service, contains less than six thousand two hundred fifty (6,250) words.

This the 12th day of January, 2018.

/s/ Edwin M. Speas, Jr.
Edwin M. Speas, Jr.

1642543.1

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record.

This the 12th day of January, 2018.

/s/ Edwin M. Speas, Jr.
Edwin M. Speas, Jr.