# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| COMMON CAUSE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT A. RUCHO, in his official capacity as Chairman of the North Carolina Senate Redistricting Committee for the 2016 Extra Session and Co-Chairman of the Joint Select Committee on Congressional Redistricting, *et al.*,<br><br>Defendants. | CIVIL ACTION<br>NO. 1:16-CV-1026-WO-JEP<br><br>THREE-JUDGE COURT |
| League of Women Voters of North Carolina, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Robert A. Rucho, in his official capacity as Chairman of the North Carolina Senate Redistricting Committee for the 2016 Extra Session and Co-Chairman of the 2016 Joint Select Committee on Congressional Redistricting, *et al.*,<br><br>Defendants. | CIVIL ACTION<br>NO. 1:16-CV-1164-WO-JEP<br><br>THREE JUDGE COURT |

## **LEGISLATIVE DEFENDANTS' RESPONSE TO COURT ORDER**

On June 27, 2018, the Court entered an order inviting the parties to respond to four questions regarding the impact on this case of the opinion by the Supreme Court in *Gill v. Whitford*, 138 S. Ct. 1916 (2018).[1] In responding to the Court's questions, Legislative Defendants incorporate by reference their previously filed Proposed Findings of Fact and Conclusions of Law (D.E. 114) and Post Trial Brief (D.E. 115).

Moreover, the partisan gerrymandering claims as alleged by plaintiffs here (regardless of which constitutional provision plaintiffs cite to support them) remain nonjusticiable, and the Supreme Court's decision in *Gill* did nothing to change that. Instead, the day after this Court issued its questions, the Supreme Court took action which confirms that plaintiffs' claims in this case are nonjusticiable and requires dismissal of the case. On June 28, 2018, the Supreme Court affirmed a decision rendered in this judicial district to reject partisan gerrymandering claims on the grounds that those claims were nonjusticiable. *Harris v. Cooper*, No. 16-166, 2018 WL 3148263, *1 (U.S. June 28, 2018). In *Harris*, plaintiffs challenged the very same congressional plan at issue here—the 2016 Plan—as a partisan gerrymander.[2]

The *Harris* plaintiffs raised many of the same claims raised here (that the 2016 Plan was a partisan gerrymander in violation of the First Amendment and Fourteenth Amendment) and relied on much of the same evidence. They contended that partisan

---

[1] Legislative Defendants note that this Court lacks jurisdiction to proceed until the Supreme Court issues its mandate in *Rucho v. Common Cause*, No. 17-1295, _ S. Ct. _, 2018 WL 1335403, *1 (U.S. Jun. 25, 2018).

[2] *Harris* (Case No. 13-949 (M.D.N.C.)), was assigned to the same district judge as both of the consolidated cases in this matter (Case Nos. 16-1026 and 16-1164).

- 2 -

Case 1:16-cv-01026-WO-JEP   Document 131   Filed 07/11/18   Page 2 of 13

gerrymandering is "unconstitutional" and that under *any* standard for partisan gerrymandering the 2016 Plan was unlawful. *Plaintiffs' Objections and Memorandum of law Regarding Remedial Redistricting Plan* at *13, *Harris v. McCrory*, No. 1:13-CV-00949, 2016 WL 3537185 at *13 (M.D.N.C. Mar. 3, 2016) (arguing that "whatever the standard may be that would govern all partisan gerrymandering claims, the General Assembly's remedial map here reflects an 'excessive injection of politics' that necessarily fails constitutional scrutiny"). They assailed the alleged cracked or packed districts in the 2016 Plan and insisted that the 2016 Plan was therefore unconstitutional. *Id.* at *14. They went so far as to assert that "if the circumstances here do not present grounds for striking down a map as a partisan gerrymander, *nothing ever will*." *Id.* at *15-16 (emphasis added).

The *Harris* panel (a panel of this judicial district) rejected these claims. This court explained that the plurality in *Vieth v. Jubelirer*, 541 U.S. 267, 305 (2004), held the partisan gerrymandering claims "nonjusticiable." *Harris*, 2016 WL 3129213, at *2 (M.D.N.C. June 2, 2016). The court specifically held that "in light of the plurality holding in *Vieth*, *the Court's hands appear to be tied*." *Id.* at *2 (emphasis added). The court conceded that "politics" is a legitimate and traditional redistricting criterion, and that the Supreme Court had not yet defined when the use of politics would go "too far." Nor had the *Harris* plaintiffs identified a justiciable standard by which such a determination could be made. *Id*. at *2.

On June 28, 2018, the Supreme Court affirmed this judgment. Thus, the 2016 Plan has survived a partisan gerrymandering claim and the Supreme Court has affirmed that result. The summary affirmance by the Supreme Court of a challenge to the same plan and in the same court as this case is binding. *Hicks v. Miranda,* 422 U.S. 332, 344 (1975). Accordingly, this case should be dismissed.

In the event that this case proceeds, Legislative Defendants answer the Court's questions as follows:

### 1. What impact, if any, *Gill* has on this Court's holding that the 2016 Plan violates the First Amendment and Article I of the Constitution.

*Gill* requires the dismissal of all of plaintiffs' claims. The plaintiffs in *Gill* alleged claims under the Equal Protection clause and the First Amendment that were identical to the claims alleged by the plaintiffs here. *See, e.g., Gill*, 138 S. Ct. at 1924 (noting that the *Gill* plaintiffs challenged the redistricting plans under the First Amendment and the Equal Protection clause). The Supreme Court quoted from the complaint filed by the *Gill* plaintiffs in which they alleged that their rights as supporters of the Democratic party and its policies had been harmed by so-called "cracking" and "packing" of the legislative districts. *See id.* at 1923-24. As in *Gill*, plaintiffs here relied exclusively upon statewide evidence purporting to show the lack of symmetry, the lack of proportionality, or violations of the so-called efficiency gap. The decision in *Gill* clarifies beyond any doubt that plaintiffs cannot challenge the alleged statewide effect of a redistricting plan on the plaintiffs' partisan preferences and that plaintiffs cannot establish standing through evidence of alleged statewide deficiencies.

Moreover, in its opinion, this Court held that any consideration of political advantage in the drawing of district lines forms the basis of a violation under both the First Amendment and Article I. *Common Cause v. Rucho*, 279 F.Supp.3d 587, 627-28, 675-76, 685 (M.D.N.C. 2018) *vacated*, No. 17-1295, __ S. Ct. __, 2018 WL 1335403, *1 (U.S. Jun. 25, 2018). Clearly, the political concerns found by this Court to have motivated an alleged illegal redistricting are "no more reprehensible" than those alleged in *Gill*. *See Badham v. Eu*, 694 F. Supp. 664, 676 (N.D. Cal, 1988) (Zirpoli, J. concurring), *sum. aff'd*, 488 U.S. 1024 (1989). Further, the Supreme Court in *Gill* repeated its recognition that redistricting is an inherently partisan process and partisan considerations will always be a part of any redistricting. *Gill*, 138 S. Ct. at 1926-29; *Vieth*, 541 U.S. at 286 (plurality opinion); *Vieth*, 541 U.S. at 307 (Kennedy, J. concurring); *Vieth* 541 U.S. at 207 (Stevens, J., dissenting) (plaintiffs must prove that "partisan considerations dominate and control the lines drawn, forsaking all neutral principles"); *Vieth*, 541 U.S. at 343 (Souter and Ginsburg, J. J., dissenting) ("some intent to gain political advantage is inescapable whenever political bodies devise a district plan"); *Vieth*, 541 U.S. at 358 (Breyer, J., dissenting) ("political considerations will likely play an important, and proper, role in the drawing of district boundaries"); *Gaffney v. Cummings*, 412 U.S. 735, 752 (1973).

Finally, it is illogical to conclude that evidence that fails to establish standing for plaintiffs bringing claims under the First or Fourteenth Amendments could nevertheless be used by plaintiffs to establish standing under an unprecedented interpretation of

Article I of the Constitution. *See, e.g., Vieth*, 541 U.S. at 305 (2004) (plurality opinion) (dismissing claims under Article I, Section 2 and 4); *Pope v. Blue*, 809 F. Supp. 392, 398 (W.D.N.C. 1992), *sum. aff'd*, 506 U.S. 801 (1992) (*citing Washington v. Finley*, 664 F.2d 913, 927-28 (4th Cir. 1981) (First Amendment provides no more protection in vote dilution case than that afforded by the Fourteenth and Fifteenth Amendments)).

It is well established that Article I, Section 2 of the United States Constitution only requires that congressional districts consist of equal population. *Karcher v. Daggett*, 462 U.S. 725, 734 n.6 (1983); *Kirkpatrick v. Preisler*, 394 U.S. 526, 534 (1969); *Pope*, 809 F. Supp. at 397-98; *Badham*, 694 F. Supp. at 673-75. And no precedent whatsoever exists for a political gerrymandering standard under Section 4 of Article I, much less one that has a different standing standard than what would be required by *Gill*. *Vieth*, 541 U.S. at 305 (plurality opinion).[3] Indeed, another federal district court in North Carolina has already rejected gerrymandering claims under both Section 2 and Section 4 of Article I. *Shaw v. Barr*, 808 F. Supp. 461, 468-69 (E.D.N.C. 1992) (three judge court) (Phillips, J., Britt, J., and Voorhees, J.) (racial gerrymandering). The three judge court was unanimous as to these claims and this ruling was not disturbed by the Supreme Court. *Shaw v. Reno*, 509 U.S. 630 (1993); *see also Shaw v. Hunt*, 861 F. Supp. 408, 420 (1994), *rev'd on other grounds*, 517 U.S. 899 (1996) (noting that the panel's Article I judgment was "undisturbed" by the Supreme Court). And to the extent this Court based its test

---

[3] This complete "lack of historical precedent" is "a telling indication of the severe constitution problem" created by this Court's unprecedented interpretation of Article I. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 505 (2010).

under Article I as prohibiting any partisan consideration by the General Assembly, that standard has once again been rejected by the Supreme Court in *Gill*. *See also Gaffney, supra.*

> **2. Whether the existing factual record is adequate to address whether Plaintiffs have standing to state a vote dilution claim under the Equal Protection Clause.**

Following the decision in *Gill*, both the factual allegations contained in the two amended complaints and the record before the Court require the dismissal of both of these cases. In contrast to four of the *Gill* plaintiffs, not a single plaintiff here has made any specific allegation that their individual district has been either cracked or packed similar to the allegations of the four plaintiffs whose claims were remanded in *Gill*. *Gill*, 138 S. Ct. at 1924; *See also Plaintiffs' Complaint*, *Whitford v. Nichol*, No. 3:15-CV-00421, 2015 WL 4651084 (W.D. Wis. July 8, 2015) *also* (D.E. 1 in 3:15-CV-00421, at pp. 7-8). Nor have plaintiffs alleged or articulated a standard for defining how a court can determine whether a district is illegally packed or cracked because of politics other than through an analysis of statewide statistics and lack of alleged symmetry or proportionality. *See Plaintiffs' Complaint*, *League of Women Voters of North Carolina, et al v. Rucho, et al*, No. 1:16-cv-01164, (M.D.N.C. Feb. 7, 2017) (D.E. 41); *Plaintiffs' Complaint, Common Cause of North Carolina, et al v. Rucho, et al*, No. 1:16-cv-01026 (M.D.N.C. Sept. 17, 2017) (D.E. 12).

Further, all of the individual *League of Women Voters* plaintiffs lack standing because they are all similarly situated to the *Gill* plaintiff, Professor Whitford. Professor

Whitford could not credibly allege a claim that his vote had been diluted because of cracking or packing because he resides in a district that regularly elected his candidate of choice. *Gill*, 138 S. Ct. at 1933. Like Professor Whitford, all of the *League of Women Voters* plaintiffs live in Congressional Districts 1, 4, or 12 where they also have been able to elect their candidates of choice. Thus, none of these individual plaintiffs have themselves been "disadvantaged" by the 2016 Plan and therefore have not suffered a "concrete and particularized" injury. *Id*. at 13, 14.

Like the *League of Women Voters* plaintiffs, all of the *Common Cause* plaintiffs rely upon the same statewide evidence and alleged statewide injury, evidence which the Supreme Court in *Gill* has found to be inadequate to prove standing. Further, four of the 14 individual *Common Cause* plaintiffs reside in Congressional Districts 1, 4, and 12, districts that continue to elect their candidates of choice (plaintiffs Hal, Bordsen, Lurie, and Gresham). All of the remaining *Common Cause* individual plaintiffs live in districts that have elected Republicans in prior plans as well as under the 2016 Plan. *See Legislative Defendants' Proposed Findings of Fact* at pp. 14-47, 51-62, *Common Cause v. Rucho,* No. 1:16-cv-01026 (M.D.N.C. Jun. 5, 2017) (D.E. 61, pp. 14-47, 51-62). Thus, unlike the plaintiffs in *Shapiro v. McManus*, 203 F. Supp. 579 (D. Md. 2016), for example, not a single plaintiff has alleged (or could allege) that she has resided in a long-standing Democratic district that was cracked by the failure of the 2016 General Assembly to observe traditional districting principles.

Nor do any of the organizational plaintiffs have standing to maintain this action. The injury alleged by the *Plaintiffs' Amended Complaint*, League *of Women Voters*, No. 1:16-cv-1164 (M.D.N.C. Feb. 10, 2017) (D.E. 41, p. 7) *Consent Amended Complaint, Common Cause,* No. 1:16-cv-01026 (M.D.N.C. Sept. 7, 2017) (D.E. 12, pp. 3-4) and the North Carolina Democratic Party (*Id*.at p. 4) is nothing more than a "generalized grievance against governmental conduct of which they do not approve," *Gill*, 138 S. Ct. at 1921. Further, it is irrational to conclude that statewide evidence alleging statewide injury can establish standing for organizations when it cannot do so for individual voters. Any possible justiciable harm resulting from any redistricting plan flows only from the "composition of the voter's own district, which causes his vote – having been packed or cracked to carry less weight than it would carry in another hypothetical district." *Id*. at 15-16. This is a standard that has not been alleged or which can be met by any of the organizational plaintiffs in these cases.

### 3. If a party believes additional factual development is required, what that factual development should entail.

Should the Court decline to dismiss this case, at a minimum, the individual plaintiffs should be required to amend their complaints to explain the factual basis of any allegations that they have been injured by any alleged cracking or packing of voters in the formation of their district. Should the Court allow these new allegations and evidence, the Legislative Defendants will need to depose these plaintiffs and any new expert to be offered by the plaintiffs. Defendants will also offer expert testimony on any such plaintiffs and their claims. Among other evidence to be offered by the Legislative

- 9 -

Case 1:16-cv-01026-WO-JEP   Document 131   Filed 07/11/18   Page 9 of 13

Defendants, the evidence will show that there is no precedent for either a packing or cracking theory where a district is based upon whole counties and whole voter tabulation districts, such as districts in the 2016 Plan. Legislative Defendants would also reserve the right to introduce new and additional fact testimony and evidence to address whatever new theory of standing and liability plaintiffs may present on remand.

**4. Assuming, *arguendo*, that no additional factual development is required, whether, under *Gill*, Plaintiffs have standing to assert a vote dilution claim under the Equal Protection Clause.**

For the reasons stated above, none of the plaintiffs have standing to assert a vote dilution claim. Plaintiffs' reliance on statewide evidence has been rejected by the United States Supreme Court. And, unlike the plaintiffs in *Shapiro* none of the plaintiffs here have alleged anything remotely close to a "partisan" vote dilution claim. Thus, even if some justiciable standard exists for a claim of partisan "vote dilution," none of the plaintiffs have alleged any such injury and therefore lack standing to pursue any such claim.

Respectfully submitted, this the 11th day of July, 2018.

OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.

/s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456
Michael D. McKnight
N.C. State Bar No. 36932
phil.strach@ogletree.com
michael.mcknight@ogletree.com
4208 Six Forks Road, Suite 1100
Raleigh, North Carolina 27609
Telephone:  (919) 787-9700
Facsimile:  (919) 783-9412
*Counsel for Legislative Defendants*

# CERTIFICATE OF SERVICE

It is hereby certified that the foregoing **LEGISLATIVE DEFENDANTS' RESPONSE TO COURT ORDER** has been electronically filed with the Clerk of Court using the CM/ECF system which will provide electronic notification of the same to the following:

Edwin M. Speas, Jr.
Carolina P. Mackie
Poyner Spruill LLP
P.O. Box 1801 (27602-1801)
301 Fayetteville St., Suite 1900
Raleigh, NC 27601
espeas@poynerspruill.com
cmackie@poymerspruill.com
*Attorneys for Common Cause Plaintiffs*

Emmet J. Bondurant
Jason J. Carter
Benjamin W. Thorpe
Bondurant, Mixson & Elmore, LLP
1201 W. Peachtree Street, NW, Suite 3900
Atlanta, Georgia 30309
bondurant@bmelaw.com
carter@bmelaw.com
bthorpe@bmelaw.com
*Attorneys for Common Cause Plaintiffs*

Gregory L. Diskant
Susan Millenky
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036
gldiskant@pbwt.com
smillenky@pbwt.com
*Attorneys for Common Cause Plaintiffs*

Alexander McC. Peters
Senior Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602

Allison Riggs
SOUTHERN COALITION FOR SOCIAL JUSTICE
1415 W. HWY. 54, STE. 101
DURHAM, NC 27707
Email: emily@southerncoalition.org
Email: anita@southerncoalition.org
*Attorneys for League of Women Voters of North Carolina Plaintiffs*

Danielle M. Lang
CAMPAIGN LEGAL CENTER
1411 K STREET NW
SUITE 1400
WASHINGTON, DC 20005
202-736-2200
Fax: 202-736-2222
Email: dlang@campaignlegalcenter.org
*Attorneys for League of Women Voters of North Carolina Plaintiffs*

Annabelle E. Harless
Ruth M. Greenwood
CAMPAIGN LEGAL CENTER
73 W. MONROE ST., STE. 322
CHICAGO, IL 60603
312-561-5508
Fax: 202-736-2222
Email: aharless@campaignlegalcenter.org
*Attorneys for League of Women Voters of North Carolina Plaintiffs*

Nicholas O. Stephanopoulos
UNIVERSITY OF CHICAGO LAW SCHOOL
1111 E 60TH STREET
CHICAGO, IL 60637
773-702-4226
Email: nsteph@uchicago.edu\
*Attorneys for League of Women Voters of North Carolina Plaintiffs*

This the 11th day of July, 2018.

OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.

/s/ Phillip J. Strach
Phillip J. Strach

34741463.1