## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

COMMON CAUSE, *et al.*,

               PLAINTIFFS,

     v.

ROBERT A. RUCHO, in his official capacity as
Chairman of the North Carolina Senate
Redistricting Committee for the 2016 Extra
Session and Co-Chairman of the Joint Select
Committee on Congressional Redistricting,
*et al.*,

               DEFENDANTS.

CIVIL ACTION
NO. 1:16-CV-1026-WO-JEP

THREE-JUDGE COURT

---

LEAGUE OF WOMEN VOTERS OF NORTH
CAROLINA, *et al.,*

               PLAINTIFFS,

     v.

ROBERT A. RUCHO, in his official capacity as
Chairman of the North Carolina Senate
Redistricting Committee for the 2016 Extra
Session and Co-Chairman of the 2016 Joint
Select Committee on Congressional
Redistricting, *et al.,*

               DEFENDANTS.

CIVIL ACTION
NO. 1:16-CV-1164-WO-JEP

THREE JUDGE PANEL

## MEMORANDUM REGARDING REMEDIES FROM THE COMMON CAUSE AND LEAGUE OF WOMEN VOTERS PLAINTIFFS

The *Common Cause* and *League of Women Voters* plaintiffs (together, "plaintiffs") jointly submit this memorandum, as directed by the Court, in response to the remedies section of this Court's Memorandum Opinion dated August 27, 2018.

As an initial matter, plaintiffs are grateful to the Court for its expeditious decision. Setting aside any impact on the 2018 election, addressed below, the Court's prompt action will enable the important issues raised by this case to be decided by the Supreme Court in the October 2018 Term, in time to have a meaningful impact on redistricting in North Carolina well in advance of the 2020 elections.

This memorandum addresses two issues: (1) whether the Court should order a new districting plan in time for the impending 2018 election; and (2) how a new plan to remedy the unconstitutional 2016 Plan should be created.

**The 2018 Election**

The Court asked the parties to "file briefs addressing whether [it] should allow the State to conduct any future elections using the 2016 Plan," including specifically the November 6, 2018 general election for members of the House of Representatives. Mem. Op., Dkt. 142, p. 290. After careful consultation, particularly with the institutional clients Common Cause, the League of Women Voters, and the North Carolina Democratic Party, plaintiffs have reluctantly concluded that—on the unique facts presented here—attempting to impose a new districting plan in time for the 2018 election would be too disruptive and potentially counterproductive.

1

Plaintiffs are in complete agreement with the Court that this is an exceptional case. The Legislative Defendants have twice enacted congressional districting plans in violation of the Constitution. They have publicly expressed—with not even a fig leaf of cover—their invidious intent to subordinate supporters of the Democratic Party and entrench the Republican Party in power. They have violated their oaths to the Constitution of the United States and have created the lamentable situation in which "North Carolina voters now have been deprived of a constitutional congressional districting plan—and, therefore, constitutional representation in Congress—for six years and three election cycles." Mem. Op., Dkt. 142, p. 292. And, separate from the districting plan at issue here, they have shamelessly attacked North Carolina's democratic institutions in a multitude of ways, many of which have already created uncertainty in the current election cycle. In short, the Legislative Defendants have done nothing to warrant any favorable consideration from this Court.

Moreover, both this Court and plaintiffs have worked zealously to bring this case to closure so as to permit the 2018 elections to proceed under a constitutionally compliant districting plan. Plaintiffs filed this lawsuit promptly after the creation of the 2016 Plan with the express goal of obtaining a remedy in time for the 2018 elections, which were then over two years away. Taken as a whole, the arguments presented by plaintiffs attempted to address preemptively every possible issue that could be raised in objection to their case. Indeed, as this Court correctly noted in its recent opinion, the *Common Cause* Plaintiffs alleged district-specific standing throughout the litigation, long before

*Gill v. Whitford* was decided, and at trial both sets of plaintiffs proved district-specific

standing.  Mem. Op., Dkt. 142, pp. 39-41.

This Court responded with diligence, moving the case through discovery and trial

by October 2017 and issuing an opinion on the merits in January 2018.  The Court

correctly held that, to the extent a district-specific showing of standing might be required,

it had been established at trial.  Mem. Op., Dkt. 118, pp. 37-39, p. 37 fn.9.  Nonetheless,

evidently swayed by the Legislative Defendants' false assertion that "th[is] [C]ourt based

its decision entirely on statewide theories of harm," Legislative Defs.' Suppl. Br. at 1,

*Rucho v. Common Cause*, No. 17-1295 (U.S. June 20, 2018), the Supreme Court

remanded this case for further consideration in light of *Gill*.  *Rucho v. Common Cause*,

138 S. Ct. 2679 (2018).  Again, this Court responded quickly, directing briefing,

evaluating supplemental declarations, ordering depositions, and issuing a new opinion on

August 27, only two months after the Supreme Court issued its remand order.

This case has always been about good government.  Common Cause and the

League of Women Voters are dedicated to advancing non-partisan principles of good

government.  The North Carolina Democratic Party is dedicated to good government in

which the partisan views of its members can fairly be heard.  Plaintiffs have reluctantly

concluded that, under these very unique circumstances, it will be too disruptive—and

counterproductive to the organizational plaintiffs' respective missions—to impose a

remedial plan in time for the 2018 election, now little more than two months away.

First, plaintiffs have considered the time that the map-drawing process would take and the uncertainty that would persist in the meantime. Whether the new plan is drawn by a special master or the General Assembly, creation of a new plan and its approval by this Court will take some weeks. For instance, if the plan is designed by the General Assembly, this Court has given the General Assembly until September 17, 2018 to draw a new map and has ordered the disclosure "soon after" that date of materials that bear on the fairness of that exercise. Mem. Op., Dkt. 142, pp. 292-93. Assuming the General Assembly meets the Court's September 17 deadline, it would take a few days thereafter for the General Assembly to make its disclosure and for plaintiffs to consider those materials and file objections. The Court would then need a short time to consider the new plan and any objections, and either approve that plan or select instead one drawn by the special master.

With that September 17 deadline, this process could not realistically be completed before October 1, 2018—at which point, there will be just five weeks before Election Day, and even less time before early voting is set to commence. Only then, once the new plan is approved, would candidates be able to declare themselves for the new districts and begin their campaigns. And only then would voters be able to be educated about the different candidates and their positions, which will be a particularly challenging exercise when voters change districts as a result of a new plan.

In addition, while all of this is taking place, the Legislative Defendants would no doubt seek a stay from the U.S. Supreme Court. They have already informed plaintiffs in

writing that they believe that the mere *appointment* of a special master "would constitute an abuse of the [C]ourt's discretion," and that "[i]f the [C]ourt appoints a special master, [they] will immediately appeal and seek a stay of any such order."  While plaintiffs vigorously disagree, they are mindful that, when this Court issued its ruling in January 2018, the Legislative Defendants sought, and obtained, a stay.  At that juncture, there was ample time for the new court-ordered plan to be created and implemented in advance of the 2018 primary and general elections.  Even so, the Supreme Court order granting the stay generated only two noted dissents, from Justices Ginsberg and Sotomayor.  With the 2018 election now so much closer, plaintiffs cannot comfortably predict a different outcome.  This could create a situation in which this Court orders a new map to govern on Election Day 2018, candidates and officeholders begin to act in reliance on that order, and the Supreme Court intervenes, changing the rules yet again.

In light of the specific timing here, and the confusion already being felt by voters because of the Legislative Defendants' attempts to alter the state constitution, these possibilities lead plaintiffs to conclude that the uncertainty induced by redrawing congressional districts now would be too great.  Plaintiffs still strongly believe—and have always maintained—that every election conducted under an unconstitutional plan visits irreparable harm on voters.  That said, given these unique facts, plaintiffs have concluded that a statewide redistricting just weeks before Election Day would not be a good-government solution.

The Court made two specific suggestions for how to implement a new districting plan in time for the 2018 elections.  First, it proposed conducting the November 2018 general election as scheduled, without a primary.  Plaintiffs recognize that the General Assembly has eliminated primaries for certain offices for nakedly partisan reasons, depriving it of the right to object to this proposal.  But plaintiffs believe strongly in the importance of primary elections.  Indeed, the North Carolina Democratic Party sued (albeit unsuccessfully) to block the General Assembly's action.  In its view, the General Assembly's abolition of primary races for judicial elections violated the rights of its members to assemble and select a candidate of their choice.  *See North Carolina Dem. Party v. Berger*, 717 F. App'x 304 (4th Cir. 2018) (per curiam).   An open election would turn more on how many candidates decide to run than on the substantive positions of the two candidates selected to represent the two major parties by their members.  Plaintiffs do not believe that would serve democracy in North Carolina.

Second, the Court proposed holding a new round of primary elections on November 6 and holding a general election at a later time.  That would impose more order on the process.  However, it is still an exceedingly tight timeline to allow qualified candidates to be identified and come forward in the five weeks between the possible issuance of a new plan and the primary date.  More troubling to us, holding elections at non-standard times tends to depress turnout, particularly of young and minority voters.  And while potentially lower turnout, standing alone, is not a reason to delay implementing a remedy for a constitutional violation, because these populations tend to

support the Democratic Party, it is entirely possible that this proposal would actually hurt, rather than help, the electoral prospects of the Democratic Party—exactly what the Legislative Defendants sought to do through the unconstitutional 2016 Plan.

Finally, there are almost insurmountable mechanical problems of arranging for all of this. Drawing new maps by October 1 is not the end of the process. Individual voters need to be assigned to the newly-drawn districts based on their street addresses by a process known as geocoding, which could take between one and three weeks after October 1. *See* Second Declaration of Kim Westbrook Strach, *Covington v. North Carolina*, No. 1:15-cv-399, Dkt. 117-1, ¶ 23 (attached as Exhibit A). Ballot preparation, proofing, and logic-and-accuracy ("L&A") testing could then add another three weeks. *Id.* at ¶ 25; *see also* N.C. Elections Board's Response to Petitions for Writ of Supersedeas or Prohibition at 2, *Cooper v. Berger*, No. 267P18 (N.C. Aug. 29, 2018) (attached as Exhibit B) (Attorney General taking the position, on behalf of the Board of Elections, that "the Board [must] begin ballot-related work at least twenty-one days before the deadline for the release of absentee ballots"). Thus, ballots might not be finalized and ready for mailing until November. Federal and state law then require 45 days between the mailing of absentee ballots and the election, *see* 52 U.S.C. § 20302(a)(8)(A); N.C. Gen. Stat. § 163A-1305, making mid-December the earliest feasible date for an election.

The North Carolina Attorney General represents the State of North Carolina and the North Carolina Board of Elections and is not aligned in any way with the Legislative Defendants. It is plaintiffs' understanding that the Attorney General will be filing a brief

7

today agreeing that, given the September timing for adoption of a new map, the risk of disruption and voter confusion is too great.

In the end, notwithstanding the blatant illegality of the 2016 Plan—and with the utmost frustration and regret—plaintiffs must endorse the wisdom of the case law abstaining from intervention when elections are truly imminent, the changes involved are so substantial, and the state election machinery is underway.

## A New Districting Plan

The Court also asked that the parties address "whether this Court should allow the General Assembly another opportunity to draw a constitutionally compliant congressional districting plan." Plaintiffs believe the General Assembly's repeated and defiant failures to comply with the law disentitle it to one more chance. As this Court noted in its opinion, "When a court finds a remedial districting plan also violates the Constitution, courts do not generally afford a legislature a second 'bite-at-the-apple' to enact a constitutionally compliant plan." Mem. Op., Dkt. 142, p. 290 (citing *North Carolina v. Covington*, 138 S. Ct. 2548, 2553-54 (2018)).

The Court should assign the map-drawing project to a qualified special master, with the direction to create a new map. In performing this task, the special master may consider the maps drawn by Dr. Chen, including but not limited to Plan 2-297.

## Judgment

Finally, plaintiffs respectfully urge the Court to promptly enter a Final Judgment that (a) declares Districts 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12 and 13, and the 2016 Plan as a

whole, unconstitutional, null and void; and (b) permanently enjoins the State of North

Carolina from conducting any future primary or general elections under the 2016 Plan

after November 6, 2018. *See* Mem. Op., Dkt. 142, p. 290. Plaintiffs submit for the

Court's consideration the final judgment issued by the three-judge panel in *Covington v.*

*North Carolina*, No. 1:1-cv-399, Dkt. 125 (M.D.N.C. Aug. 15, 2016) (attached as Exhibit

C), as an example of such an order.

Respectfully submitted, this the 31st day of August, 2018.


*/s/ Edwin M. Speas, Jr.*
Edwin M. Speas, Jr.
North Carolina Bar No. 4112
Steven B. Epstein
North Carolina Bar No. 17396
Caroline P. Mackie
North Carolina Bar No. 41512
POYNER SPRUILL LLP
301 Fayetteville Street, Suite 1900
Raleigh, NC 27601
Telephone: 919-783-6400
Facsimile: 919-783-1075
*espeas@poynerspruill.com*
*sepstein@poynerspruill.com*
*cmackie@poynerspruill.com*

*/s/ Emmet J. Bondurant*
Emmet J. Bondurant
Georgia Bar No. 066900
Jason J. Carter
Georgia Bar No. 141669
Benjamin W. Thorpe
Georgia Bar No. 874911
BONDURANT, MIXSON
  & ELMORE, LLP
1201 W. Peachtree Street, NW, Suite 3900
Atlanta, GA 30309
Telephone (404) 881-4100
Facsimile (404) 881-4111
*bondurant@bmelaw.com*
*carter@bmelaw.com*
*bthorpe@bmelaw.com*

/s/ Gregory L. Diskant
Gregory L. Diskant
New York Bar No. 1047240
Peter A. Nelson
New York Bar No. 4575684
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2222
*gldiskant@pbwt.com*
*pnelson@pbwt.com*

*Counsel for the* Common Cause *Plaintiffs*

/s/ Allison J. Riggs
Allison J. Riggs (State Bar # 40028)
Jaclyn Maffetore (State Bar # 50849)
Jeffrey Loperfido (State Bar # 52939)
SOUTHERN COALITION FOR SOCIAL
JUSTICE
1415 Highway 54, Suite 101
Durham, NC 27707
Telephone: (919) 323-3380 ext. 115
Facsimile: (919) 323-3942
allisonriggs@southerncoalition.org
jaclynmaffetore@southerncoalition.org

/s/ Paul M. Smith
Paul M. Smith
CAMPAIGN LEGAL CENTER
1411 K Street NW, Suite 1400
Washington, DC 20005
Telephone: (202) 736-2200
psmith@campaignlegalcenter.org

/s/ Ruth M. Greenwood
Ruth M. Greenwood
Annabelle E. Harless
CAMPAIGN LEGAL CENTER
73 W. Monroe St., Suite 322
Chicago, IL 60603
Telephone: (312) 561-5508
rgreenwood@campaignlegalcenter.org
aharless@campaignlegalcenter.org

/s/ Nicholas O. Stephanopoulos
Nicholas O. Stephanopoulos
UNIVERSITY OF CHICAGO LAW
SCHOOL
1111 E. 60th St.
Chicago, IL 60637
Telephone: (773) 702-4226
nsteph@uchicago.edu

*Counsel for the* League of Women Voters
of North Carolina *Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record.

This 31st day of August, 2018.

/s/ *Edwin M. Speas, Jr.*
Edwin M. Speas, Jr.