**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| Common Cause, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION |
| Robert A. Rucho, in his official capacity | ) | NO. 1:16-CV-1026-WO-JEP |
| as Chairman of the North Carolina | ) | |
| Senate Redistricting Committee for the | ) | THREE-JUDGE COURT |
| 2016 Extra Session and Co-Chairman of | ) | |
| the Joint Select Committee on | ) | |
| Congressional Redistricting, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| League of Women Voters of North | ) | |
| Carolina, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION |
| Robert A. Rucho, in his official capacity | ) | NO. 1:16-CV-1164-WO-JEP |
| as Chairman of the North Carolina | ) | |
| Senate Redistricting Committee for the | ) | THREE JUDGE COURT |
| 2016 Extra Session and Co-Chairman of | ) | |
| the 2016 Joint Select Committee on | ) | |
| Congressional Redistricting, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## STATE DEFENDANTS' BRIEF ON POSSIBLE REMEDIES

Defendants Andy Penry, in his official capacity as Chairman of the North Carolina

Bipartisan State Board of Elections and Ethics Enforcement (the "State Board"); the State

Board; and the State of North Carolina (collectively, "State Defendants,") hereby submit the following brief pursuant to this Court's Memorandum Opinion entered August 28, 2018.

The Memorandum Opinion directs the parties to address "the viability of the alternatives discussed above, as well as any other potential schedules for conducting elections using a constitutionally compliant plan that would not unduly interfere with the State's election machinery or confuse voters." Memorandum Opinion (Doc. 142) at 289-90.[1]

The State Defendants do not advocate here for any particular remedy.[2] Instead, they write to inform the Court of the logistical and legal considerations involved in implementing, at this stage, a new congressional plan for elections in North Carolina before the 116th Congress is sworn in.

## I.     LEGAL AND LOGISTICAL FRAMEWORK

The State Defendants' administration of elections is governed by a lattice of federal and state law and logistical considerations.   That framework is summarized below.

---

[1]     Governor Roy Cooper, who was sued in his official capacity as Governor of North Carolina does not join in this submission.

[2]     The Memorandum Opinion also asked the parties to address whether "this Court should allow the General Assembly another opportunity to draw a constitutionally compliant congressional districting plan."  Memorandum Opinion (Doc. 142) at 292. The State Defendants do not advocate a particular position on this question and believe that the other parties will adequately address the Court's concerns on this issue.

## A. Federal and State Law

Working backward, both federal law and the U.S. Constitution dictate that congressional terms expire on January 3rd of the year after the election. U.S. CONST. amend. XX, § 1; 2 U.S.C. § 7. Therefore, after this year's election, North Carolina's congressional representatives must be ready to be sworn in on January 3, 2019. Federal law also mandates that congressional elections take place "the Tuesday next after the 1st Monday in November, in every even numbered year" (this year, November 6). 2 U.S.C. § 7.

In addition to setting the terms of service and times for election, federal law also requires that absentee ballots are made available to overseas and military voters at least 45 days before the election. 52 U.S.C. § 20302(a)(8).

In addition to these federal requirements, several state laws also govern the administration of elections. Absentee ballots for non-overseas and non-military voters, for example, must be made available 60 days before a general election, and 50 days before a primary election (unless the State Board reduces this requirement to 45 days). N.C. Gen. Stat. §§ 163A-741, 1307.

State law also allows early voting between the third Wednesday and last Saturday before the election. N.C. Gen. Stat. § 163A-1300.

Both counties and the State conduct canvasses after the election to finalize election results. County boards of elections must meet on the 10th day after the election to complete the canvass. N.C. Gen. Stat. § 163A-1172(b). The State Board must meet on the Tuesday three weeks after election day to complete the canvass. *Id.*

3

With the exception of the requirement that the terms for the 115th Congress expire on January 3, 2019 (which is also governed by the Constitution), federal courts may modify any of the statutory deadlines discussed above. *See, e.g.*, *Republican Party v. Hunt*, 841 F.Supp. 722, 733 (E.D.N.C. 1994) (federal court modifying conduct and schedule of elections).

## B.   Logistical Considerations

In addition to requirements under federal and state law, the State Defendants must take into account a number of logistical considerations to ensure that elections in North Carolina are competently administered.  The State Defendants present below a compressed schedule to allow time for the required procedures to be administered efficiently.  The schedule below does not represent the ideal, but rather the possible.

When the State Defendants administer elections under new redistricting plans, they must apply these new district lines to voter records.  This is referred to as "geocoding" and, from historical experience, takes at least two weeks to implement and conduct necessary audits.

Under this schedule, simultaneously with geocoding, interested candidates would declare their candidacy at this time.

After geocoding, the State Defendants must prepare the official ballots for each district.  Ballot preparation typically requires 21 days for ballot layout, proofing, coding, printing, and delivery.

4

After the ballots are printed by the vendor, the ballots are burned onto media cards, which are used to tabulate vote counts during early voting and on Election Day. The process of burning media cards requires at least 14 days.

After the media cards are created, the State Defendants conduct logic and accuracy tests to ensure that the tabulators properly read the ballots. This testing typically takes anywhere between 2 and 6 days, depending on the technology that each county uses to tabulate votes.

Finally, the State Defendants host mock elections during which all 100 counties upload results into the election management system, mimicking Election Night. The State Defendants rely on these mock election tests to ensure that election results are properly and accurately processed and tabulated and to test the accuracy of the State Board's web-based elections results page. These mock elections are held at least 14 days before the start of one-stop early voting.

Implementing new maps will require the State Board and county boards of elections to begin the election process anew. Self-reported totals gathered after the 2014 general election indicate that the cost of administering that election was $9.51 million. The State Board estimates that implementing new maps at this stage will likely cost approximately the same amount.

## II.     POSSIBLE ELECTION SCHEDULES

It is logistically possible to administer the 2018 elections using a new congressional redistricting plan. To do so, however, this Court would need to suspend or modify the

operation of the federal and state law provisions discussed above. In addition, the election would have to be administered under an irregular and compressed schedule. Three of these schedules are outlined below for the Court's consideration.

### A. Schedule One: Stand-alone congressional election on December 18, 2018 without a primary

The most administratively feasible schedule involves a stand-alone congressional election to take place after November 6, without a primary. This schedule envisions administering the general election on all state-level contests, while redistricting, candidate filing, and election preparation occur ahead of separate congressional elections.

To accommodate this schedule, the Court would need to suspend the requirement that congressional elections take place this year on November 6. The Court may also need to modify either the statutory requirement for one-stop early voting or the time for overseas absentee voting, or both. The possible schedule below presents the bare minimum amount of time that the State Defendants require to logistically administer congressional elections. It assumes that the Court has suspended one-stop early voting and federal requirements for absentee voting. The schedule below does, however, indicate the times at which any one-stop early voting and absentee voting would take place, if the Court were to order early or absentee voting. To be clear, the State Defendants do not advocate for the suspension of federal or state law requirements. Rather, the schedule below is intended to highlight for the Court the deadlines that most require the Court's explicit modification.

6

To allow the greatest amount of time for election preparation, the State Defendants present this possible schedule, which envisions holding the congressional election on the last Tuesday possible: December 18, 2018.

| Date | Event |
|------|-------|
| **Date** | **Event** |
| Thursday, January 03 | 116th Congress sworn in at noon |
| Wednesday, January 02, 2019 | State canvass and transmission to House Clerk |
| Friday, December 28 | County canvass (note the Christmas holiday) |
| **Tuesday, December 18** | **Election Day** |
| Under N.C. Gen. Stat. § 163A-1300, 20 days before Election Day.  Reduced to 0 days for illustration purposes. | One-stop early voting.  If the Court were to order a period for one-stop early voting, the dates below would have to be modified accordingly. |
| Tuesday, December 4 | Mock election |
| Wednesday, November 28 | Logic & accuracy testing |
| Wednesday, November 14 | Media card burning |
| Under 52 U.S.C. § 20302(a)(8), after ballot preparation (which takes at least 21 days), at least 45 days before Election Day.  Reduced to 0 days for illustration purposes. | Overseas and absentee voting period.  If the Court were to order a period of overseas absentee voting, the dates below would have to be modified accordingly. |
| Wednesday, October 24 | Ballot preparation begins |
| Wednesday, October 10 | Geocoding and candidate filing |

If the Court were to consider this schedule, districts would have be redrawn and datafiles delivered to the State Defendants by October 10. If the Court were to modify this schedule to accommodate any overseas absentee voting and/or one-stop early voting, however, the schedule would need to be modified accordingly and districts would have to be redrawn and datafiles delivered to the State Defendants earlier.

**B.      Schedule Two: November 6, 2018 primary followed by December 18, 2018 general**

The Court also asked the State Defendants to consider a schedule in which primaries would be held on November 6 with a general election to follow.

If the State Defendants were to maintain the procedures it follows for preparation and accuracy testing, it would not be possible to hold primaries on November 6 with a general election to follow in enough time to swear in North Carolina's new congressional representatives by January 3, 2019.

To hold primaries and the general election *seriatum*, the State Defendants would have to perform almost all of the administrative and testing procedures outlined in the schedule above twice, once for primary contests and once for general election contests. As the schedule above demonstrates, even if the Court suspended early and absentee voting, there is still not enough time to administer a primary and general election. The mock schedule below demonstrates this point:

8

| Date | Event |
|------|-------|
| Thursday, January 03 | 116th Congress sworn in at noon |
| Wednesday, January 02, 2019 | State canvass and transmission to House Clerk |
| Friday, December 28 | County canvass (note the Christmas holiday) |
| **Tuesday, December 18** | **General Election for congressional races** |
| Under N.C. Gen. Stat. § 163A-1300, 20 days before Election Day.  Reduced to 0 days. | One-stop early voting. (Suspended under this schedule) |
| Tuesday, December 4 | Mock election |
| Wednesday, November 28 | Logic & accuracy testing |
| Friday, November 16 | County canvass for state-wide election[3] |
| **Tuesday, November 6** | **General Election for state races** |
| Wednesday, November 14 | Media card burning |
| Under 52 U.S.C. § 20302(a)(8), after ballot preparation (which takes at least 21 days), at least 45 days before Election Day. Reduced to 0 days. | Overseas and absentee voting period.  (Suspended under this schedule) |
| Wednesday, October 24 | Ballot preparation for general election begins |
| **Tuesday, October 23** | **Primary Election for congressional races** |

---

[3]     L&A testing for a special congressional election cannot occur until county canvass for the November 6 general election for state races ends.

| | |
|---|---|
| Wednesday, October 17 | Early voting for general election in state contests begins (until November 3) |
| Under N.C. Gen. Stat. § 163A-1300, 20 days before Election Day. Reduced to 0 days. | One-stop early voting. (Suspended under this schedule) |
| Tuesday, October 9 | Mock election |
| Wednesday, October 3 | Logic & accuracy testing |
| Wednesday, September 19 | Media card burning |
| Under 52 U.S.C. § 20302(a)(8), after ballot preparation (which takes at least 21 days), at least 45 days before Election Day. Reduced to 0 days. | Overseas and absentee voting period. (Suspended under this schedule) |
| Wednesday, August 29 | Ballot preparation for primary election begins |
| Wednesday, August 15 | Geocoding and candidate filing |

As this schedule demonstrates, even if this Court suspended early and absentee voting, the State Defendants would have had to have received datafiles corresponding to redrawn districts by August 15. Moreover, neither the State Board's elections infrastructure nor the counties' can accommodate two simultaneous elections. As a result, it is not administratively feasible to hold primaries and a general election in time for North Carolina congressional delegates to be sworn in on January 3, 2019.

10

**C.      Schedule Three: November 6, 2018 congressional election without primary**

The Court also asked the State Defendants to consider a schedule in which the State would hold open congressional elections on November 6, without a primary election.

Many of the same logistical limitations identified in the possible schedules outlined above make administering general congressional elections without a primary by November 6 difficult.

As the schedule above demonstrates, even if the Court suspended early and absentee voting, there is still not enough time to administer a general election, without a primary, with new districts on November 6. The mock schedule below demonstrates this point:

| Date | Event |
| --- | --- |
| Thursday, January 03 | 116th Congress sworn in at noon |
| Tuesday, November 27 | State canvass and transmission to House Clerk |
| Friday, November 16 | County canvass (note the Christmas holiday) |
| **Tuesday, November 6** | **Election Day** |
| Under N.C. Gen. Stat. § 163A-1300, 20 days before Election Day. Reduced to 0 days. | One-stop early voting. (Suspended under this schedule) |
| Tuesday, October 23 | Mock election |
| Wednesday, October 17 | Logic & accuracy testing |
| Wednesday, October 3 | Media card burning |
| Under 52 U.S.C. § 20302(a)(8), after ballot preparation (which takes at least 21 days), at least 45 | Overseas and absentee voting. (Suspended under this schedule) |

11

days before Election Day.
Reduced to 0 days.

Wednesday, September 12          Ballot preparation begins

Wednesday, August 29             Geocoding and candidate filing


As this schedule demonstrates, even if this Court suspended early and absentee voting, the State Defendants would have had to have received datafiles corresponding to redrawn districts by August 29. As a result, it is not administratively feasible to hold a general election, without primaries, using newly drawn districts on November 6.


## Conclusion

The State Defendants stand ready and willing to assist the Court by providing any information the Court finds necessary or helpful, including the elections process, deadlines and requirements.

Respectfully submitted, this 31st day of August, 2018.

NORTH CAROLINA DEPARTMENT OF JUSTICE

By: /s/ James Bernier, Jr.
James Bernier, Jr.
Special Deputy Attorney General
N.C. State Bar No. 45869
jbernier@ncdoj.gov

Alexander McC. Peters
Senior Deputy Attorney General
N.C. State Bar No. 13654
apeters@ncdoj.gov

N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
Telephone: (919) 716-6900
Facsimile: (919) 716-6763
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I, James Bernier, Jr., hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification of the same to the following:

Edwin M. Speas, Jr.
Carolina P. Mackie
Poyner Spruill LLP
P.O. Box 1801 (27602-1801)
301 Fayetteville St., Suite 1900
Raleigh, NC 27601
espeas@poynerspruill.com
cmackie@poynerspruill.com
*Attorneys for Common Cause Plaintiffs*

Emmet J. Bondurant
Jason J. Carter
Benjamin W. Thorpe
Bondurant, Mixson & Elmore, LLP
1201 W. Peachtree Street, NW, Suite 3900
Atlanta, Georgia 30309
bondurant@bmelaw.com
carter@bmelaw.com
bthorpe@bmelaw.com
*Attorneys for Common Cause Plaintiffs*

Allison Riggs
SOUTHERN COALITION FOR SOCIAL JUSTICE
1415 W. HWY. 54, STE. 101
DURHAM, NC 27707
Email: emily@southerncoalition.org
Email: anita@southerncoalition.org
*Attorneys for League of Women Voters of North Carolina Plaintiffs*

Annabelle E. Harless
Ruth M. Greenwood
CAMPAIGN LEGAL CENTER
73 W. MONROE ST., STE. 322

Gregory L. Diskant
Susan Millenky
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036
gldiskant@pbwt.com
smillenky@pbwt.com
*Attorneys for Common Cause Plaintiffs*

Phillip J. Strach
Michael D. McKnight
4208 Six Forks Road, Suite 1100
Raleigh, North Carolina 27609
phil.strach@ogletreedeakins.com
michael.mcknight@ogletreedeakins.com
*Attorneys for Legislative Defendants*

Danielle M. Lang
CAMPAIGN LEGAL CENTER 1411 K STREET NW SUITE 1400 WASHINGTON, DC 20005
202-736-2200
Fax: 202-736-2222
Email: dlang@campaignlegalcenter.org
*Attorneys for League of Women Voters of North Carolina Plaintiffs*

Nicholas O. Stephanopoulos
UNIVERSITY OF CHICAGO LAW SCHOOL
1111 E 60TH STREET

14

CHICAGO, IL 60603
312-561-5508
Fax: 202-736-2222
Email: aharless@campaignlegalcenter.org
*Attorneys for League of Women Voters of*
*North Carolina Plaintiffs*

CHICAGO, IL 60637
773-702-4226
Email: nsteph@uchicago.edu
*Attorneys for League of Women Voters of*
*North Carolina Plaintiffs*

Dated: August 31, 2018

/s/ James Bernier, Jr.
James Bernier, Jr.
Special Deputy Attorney General
North Carolina State Bar No.45869
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Tel: (919) 716-6900
Fax: (919) 716-6763
jbernier@ncdoj.gov

15