IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT A. RUCHO, in his official capacity as Chairman of the North Carolina Senate Redistricting Committee for the 2016 Extra Session and Co-Chairman of the 2016 Joint Select Committee on Congressional Redistricting, *et al.*, <br><br> Defendants. | CIVIL ACTION NO. 1:16-CV-1164 <br><br> THREE-JUDGE COURT |

**LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA PLAINTIFFS' RESPONSE TO LEGISLATIVE DEFENDANTS' EMERGENCY MOTION TO STAY PENDING SUPREME COURT REVIEW AND REQUEST FOR EXPEDITED RULING**

In its order dated September 4, 2018, (hereinafter "September 4 Order"), ECF No. 149, this Court asked Plaintiffs and State Defendants to file a response to the Legislative Defendants' Emergency Motion to Stay Pending Supreme Court Review and Request for Expedited Ruling (hereinafter "the Motion"), Aug 31, 2018, ECF No. 145.[1] The Court requested that the parties' briefing focus on whether Legislative Defendants will suffer irreparable harm following the Court's order not to allow the unconstitutional 2016 Plan

---

[1] Plaintiffs' citations to ECF document numbers throughout this brief refer to the document numbers as they appear in *League of Women Voters of North Carolina et al. v. Rucho et al.*, No. 1:16-CV-1164.

to be used after the November 6, 2018 general election. This brief responds to the Court's request.

## ARGUMENT

There is no need for the Court to stay its August 27, 2018 Opinion and Order (hereafter "August 27 Order"), ECF No. 141. The August 27 Order only enjoins the use of the 2016 Plan in any election *after* the November 6, 2018, election (namely, use at the November 3, 2020 general election). August 27 Order at 290. Rather than impose a stay of its decision, the League Plaintiffs submit that the Court should instead consider commencing remedial plan action in May of 2019, by which time, assuming that Legislative Defendants do not engage in any purposeful delay, the Supreme Court will have completed its review of this Court's opinion and order, should it decide to take up the matter. Engaging a Special Master to draw a remedial plan, as the League Plaintiffs would strongly urge this Court to do, in May and June of 2019 will interfere with no 2020 election deadlines, will allow ample time for implementation of a constitutional map, and will give voters certainty about the map under which the 2020 elections will be conducted by the summer of 2019. With this course of action, no Defendants, Legislative or State, will suffer any harm and the interests of the plaintiffs, who are yet to vote under a constitutional congressional plan this decade, will be respected. Indeed, with this course of action, there is nothing for the Supreme Court to stay, let alone any immediate or irreparable harm.

In the alternative, if this Court chooses to impose a stay of its August 27 Order, League Plaintiffs do not oppose the 30-day deadline for the jurisdictional statement (*i.e.*

2

filing by October 1, 2018) requested in Common Cause Plaintiffs' Brief in Response to Legislative Defendants' Emergency Motion to Stay Pending Supreme Court Review and Request for Expedited Ruling (hereafter "Common Cause Brief"), ECF No. 148, in light of Plaintiffs' very valid concerns that Legislative Defendants will engage in delay to bring into question the possibility of a remedy for the 2020 elections.

## I. There is no need for this Court to order a stay

In the Legislative Defendants' Memorandum in Support of Motion to Stay and in Response to the Court's Order of August 27, 2018 (hereafter the "Brief"), Legislative Defendants do not explain the standard that governs whether a Court should issue a stay of their order. A Court's decision whether to grant a stay is discretionary, and within "the inherent power in courts under their general equity powers and in the efficient management of their dockets." *Williford v. Armstrong World Indus., Inc.,* 715 F.2d 124, 127 (4th Cir. 1983). "It is not, however, without limitation." *Id*. The "proper use of this [discretion] 'calls for the exercise of judgment which must weigh competing interests and maintain an even balance.'" *Id.* (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 254-55 (1936)). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford,* 715 F.2d at 127. In other words, the court should consider whether the movant has demonstrated "a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay...will work damage to someone else." *Landis*, 299 U.S. at 255.

The only explanation the Legislative Defendants offer for why this Court should impose a stay is a statement that "mandatory injunctions of statewide election laws,

3

including redistricting plans, issued by lower courts at the later stages of an election cycle have consistently been stayed. *See, e.g., Hunt v. Cromartie*, 529 U. S. 1014 (2000); *Voinovich v. Quilter*, 503 U.S. 979 (1992); *Wetherell v. DeGrandy*, 505 U.S. 1232 (1992); *Louisiana v. Hays*, 512 U.S. 1273 (1994); *Miller v. Johnson*, 512 U.S. 1283 (1994)." Brief at 13. That stays were imposed nearly twenty years ago, in particular factual scenarios that have not been explained, is not a sufficient justification to support the issuance of a stay in this case. Even more significantly different is the fact that this Court is not proposing a change to a redistricting plan late in the cycle—thus, all the cases cited by Legislative Defendants are irrelevant. In September of 2018, we could not be any earlier in the November 2020 election cycle. Thus, this Court's suggestion in its September 4 Order that the key issue for a Court when choosing whether to issue a stay is whether there will be irreparable harm to the Legislative Defendants is precisely the question on which resolution of the Motion turns.

Here, there will be no clear, let alone irreparable, harm to any defendants if this Court does not impose a stay of the August 27 Order. The only reason the Legislative Defendants seek a stay is so that they need not expend resources to draw a new redistricting plan while they are appealing the opinion and order to the Supreme Court. But given the timeline, that is identifying a problem without a cause.[2] Because the 2020

---

[2] And, even if the use of resources were a relevant concern here, that alone would not be sufficient to prove a hardship on the Legislative Defendants. First, the cost of drawing a new plan pales in comparison to the taxpayer resources that have already been expended by the defendants drawing and defending unconstitutional redistricting plans in court and the resources needed to remedy those constitutional violations. See *Cooper v. Harris*, 137 S. Ct. 1455; *North Carolina v. Covington*, 137 S. Ct. 1624 (2017). Further, courts in

election cycle is so far out, rather than issue a stay, this Court could and should simply set out a remedial schedule to commence in 2019, by which time Supreme Court review of this court's opinion and order should be complete. This properly incentivizes Legislative Defendants to abandon any dilatory tactics and file their Jurisdictional Statement promptly, while avoiding any court action that could even be stayed.

Turning back to the standard applicable to the Motion here, given the Legislative Defendants' complete failure to demonstrate any, let alone "a clear case of hardship or inequity," there is no hardship that Plaintiffs must demonstrate on the other end of that equitable equation in order to be entitled to the judgment standing. However, there would be an inequity to the plaintiffs if a stay were imposed. The plaintiffs have endured one election under the unconstitutional plan, in 2016, and have reluctantly accepted that they must endure a second election using the unconstitutional districts, in 2018. *See* Memorandum Regarding Remedies From the Common Cause and League of Women Voters Plaintiffs, ECF No. 143. This harm imposes an enormous indignity on Plaintiffs, puts them at a disadvantage in motivating their voters to participate in elections where it seems to many voters as if the wrong will never be righted, and may impede their ability to gather input from their constituents and other stakeholders about what they would like

---

redistricting cases have held that "mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Conkright v. Frommert*, 556 U.S. 1401, 1403 (2009) (Ginsburg, J. in chambers) (quotation marks omitted); see also *Cane v. Worcester Cty.*, 874 F. Supp. 695, 698 (D. Md. 1995); *Johnson v. Mortham*, 936 F. Supp. 1540, 1542 (N.D. Fla. 1996). The same logic applies here. Resources expended correcting a redistricting plan that sorts voters based on their political beliefs can hardly be considered be a hardship for the defendants, particularly when the map drawers openly flaunted their discriminatory conduct.

5

to see in a constitutional plan when that process is commenced after the Supreme Court's decision. Thus, the balance of the equities in this case, which is unnecessary because Legislative Defendants have not come close to carrying their burden, lies with maintaining the status quo.

**II.    If a stay is ordered, a deadline for the filing of the jurisdictional statement should be required**

If this Court chooses to issue a stay of its August 27 Order, then League Plaintiffs would not oppose, for the reasons explained in the Common Cause Brief, a stay with the two conditions noted by the Common Cause Plaintiffs, namely: "(1) that the stay will expire of its own force 30 days after the filing of the Legislative Defendants' Notice of Appeal (*i.e.*, on October 1, 2018) *unless* the Legislative Defendants have, by that time, filed their Jurisdictional Statement in the Supreme Court; and (2) that the Legislative Defendants thereafter diligently prosecute their appeal to the Supreme Court with no requests for extensions of time." Common Cause Brief at 4.

## CONCLUSION

Legislative Defendants have offered no reasons for why they would suffer harm if a stay of the August 27 Order is not issued by the Court, and that is because there will be no harm. Given the Legislative Defendants' failure to show the burden necessary for a stay motion, the stay should be denied. League Plaintiffs propose that the Court set a schedule for the commencement of remedial proceedings in May of 2019, so that a speedy Supreme Court review may occur, and, when the findings of this Court are upheld, a new constitutional plan may be adopted with haste.

Respectfully submitted this 5th day of September, 2018.

/s/ Allison J. Riggs
Allison J. Riggs (State Bar # 40028)
Jaclyn A. Maffetore (State Bar #50849)
Jeffrey Loperfido (State Bar #52939)
Southern Coalition for Social Justice
1415 Highway 54, Suite 101
Durham, NC 27707
Telephone: (919) 323-3380
Facsimile: (919) 323-3942
allison@southerncoalition.org
jmaffetore@scsj.org
jloperfido@scsj.org
*Counsel for All Plaintiffs*

/s/ Paul M. Smith
Paul M. Smith
Campaign Legal Center
1411 K. St. NW, Suite 1400
Washington, DC 20005
(202) 736-2200
psmith@campaignlegalcenter.org

/s/ Ruth M. Greenwood
Ruth M. Greenwood
Annabelle E. Harless
Campaign Legal Center
73 W Monroe St, Suite 302
Chicago IL 60603
(312) 561-5508
rgreenwood@campaignlegalcenter.org
aharless@campaignlegalcenter.org

/s/ Nicholas O. Stephanopoulos
Nicholas O. Stephanopoulos
University of Chicago Law School
1111 E 60th St.
Chicago, IL 60637
(773) 702-4226
nsteph@uchicago.edu

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

I hereby certify that the total word count for the body of the brief including headings and footnotes is 1,664.

This 5th day of September, 2018.

/s/ Ruth M. Greenwood
Ruth M. Greenwood

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing via electronic mail, addressed to counsel for all parties in this consolidated action.

This 5th day of September, 2018.

/s/ Ruth M. Greenwood
Ruth M. Greenwood