# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| COMMON CAUSE, et al.,<br><br>        Plaintiffs,<br>v.<br><br>ROBERT A. RUCHO, in his official capacity as Chairman of the North Carolina Senate Redistricting Committee for the 2016 Extra Session and Co-Chairman of the Joint Select Committee on Congressional Redistricting, et al.,<br><br>        Defendants. | No. 1:16-CV-1026 |
| LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA, et al.,<br><br>        Plaintiffs,<br>v.<br><br>ROBERT A. RUCHO, in his official capacity as Chairman of the North Carolina Senate Redistricting Committee for the 2016 Extra Session and Co-Chairman of the Joint Select Committee on Congressional Redistricting, et al.,<br><br>        Defendants. | No. 1:16-CV-1164 |

**ORDER**

PER CURIAM:

In a memorandum opinion and order entered August 27, 2018 (the "Order"), this Court held that North Carolina's 2016 Congressional Redistricting Plan (the "2016 Plan") constituted an unconstitutional partisan gerrymander in violation of the Equal Protection Clause of the Fourteenth Amendment, the First Amendment, and Article I of the Constitution. *Common Cause v. Rucho ("Common Cause II")*, --- F. Supp. 3d ---, 2018 WL 4087220 (M.D.N.C. Aug. 27, 2018). Before the Court is a motion (the "Motion") by only the Legislative Defendants[1] in this matter—four Republican members of the North Carolina General Assembly—to stay this Court's Order pending Supreme Court review. Leg. Defs.' Emer. Mot. To Stay Pending S. Ct. Rev. & Req. for Exp. Hr'g., Aug. 31, 2018, ECF No. 146. Neither the State of North Carolina nor any of the State Board Defendants have sought an emergency stay. Nor has the State of North Carolina or the State Board Defendants appealed this Court's Order to the Supreme Court. For the reasons stated below, we grant the Motion, subject to certain conditions.

I.

On February 5, 2016, this Court held that two districts established by North Carolina's 2011 decennial congressional redistricting plan constituted racial gerrymanders in violation of the Equal Protection Clause. *Harris v. McCrory*, 159 F.

---

[1] All undefined capitalized terms in this Order have the same meaning as in this Court's August 27, 2018, opinion and order.

Supp. 3d 600, 604 (M.D.N.C. 2016), *aff'd sub nom. Cooper v. Harris*, 137 S. Ct. 1455 (2017). Less than two weeks later, the General Assembly adopted the 2016 Plan. *Common Cause II*, 2018 WL 4087220, at *9. Several months later, Plaintiffs filed the instant actions. *Id.* at *10–11.

In October 2017, this Court held a four-day trial, during which the parties introduced evidence and presented testimony and arguments. *Common Cause II,* 2018 WL 341658, at *11. Thereafter, the parties filed extensive post-trial briefing. *Id.* at *11–13. On January 9, 2018, this Court ruled in favor of Plaintiffs on all of their claims and gave Defendants until January 24, 2018, to enact a remedial plan. *Common Cause v. Rucho ("Common Cause I")*, 279 F. Supp. 3d 587, 691 (M.D.N.C. 2018), *vacated sub nom. Rucho v. Common Cause*, 138 S. Ct. 2679 (2018) (mem.). Without making any discernible effort to draw a new map, Legislative Defendants then successfully sought a stay from the Supreme Court. *Rucho v. Common Cause*, 138 S. Ct. 923 (2018). On June 25, 2018, the Supreme Court vacated this Court's judgment for reconsideration in light of *Gill v. Whitford*, 138 S. Ct. 1916 (2018), which addressed what evidence a plaintiff must put forward to establish Article III standing to assert a partisan gerrymandering claim under the Equal Protection Clause based on a vote dilution theory.

Thereafter, this Court invited the parties to submit briefing regarding the impact of *Gill* on this Court's previous decision striking down the 2016 Plan. *Common Cause II*, 2018 WL 4087220, at *13. After carefully considering the parties' briefing, this Court unanimously held that at least some of the Plaintiffs had standing to lodge a partisan gerrymandering challenge under Article I of the Constitution, and further unanimously

3

held that the 2016 Plan violates Article I. *Id.* at *13; *id.* at *112 (Osteen, J., concurring in part and dissenting in part). This Court also unanimously held that, under *Gill*, at least one Plaintiff had standing to assert an Equal Protection challenge to 10 of the 13 districts in the 2016 Plan, and that 9 of those 10 districts violate the Equal Protection Clause. *Id.* at *13 (majority op.); *id.* at *112 (Osteen, J., concurring in part and dissenting in part). A majority of the Court further held that at least one Plaintiff had standing to assert Equal Protection challenges to the remaining three districts in the 2016 Plan and that those districts also violate the Equal Protection Clause. *Id.* at *9, 22 (majority op.). Finally, a majority of the Court held that Plaintiffs had standing to assert a First Amendment partisan gerrymandering challenge to the 2016 Plan as a whole, and that the 2016 Plan violates the First Amendment. *Id.* at *9, 26 (majority op.).

This Court's August 27, 2018, memorandum opinion and order unanimously enjoined the State from using the 2016 Plan in any election *after* the November 6, 2018, general election. *Id.* at *108. The Court invited the parties to submit briefing no later than August 31, 2018, addressing whether to allow the State to use the unconstitutional 2016 Plan in the November 6, 2018, election. *Id.* And the Court further asked the parties to address whether the General Assembly should be given a third opportunity to draw a constitutionally compliant congressional redistricting plan, notwithstanding that its first two efforts had been ruled unconstitutional. *Id.* at 109.

In a joint brief submitted August 31, 2018, Plaintiffs asked this Court *not* to enjoin use of the 2016 Plan in the November 6, 2018, general election on grounds that doing so would unduly interfere with the ongoing election and the State's electoral machinery, as

4

well as depress turnout.  In accordance with Plaintiffs' request, this Court entered an order on September 4, 2018, stating that it would not bar the State from using the 2016 Plan in the November 6, 2018, general election.  Order, Sept. 4, 2018, ECF No. 150.

Also, on August 31, 2018, Legislative Defendants filed the Motion and noticed an appeal of this Court's July 27, 2018, opinion and order to the Supreme Court.  Leg. Defs.' Notice of Appeal, Aug. 31, 2018, ECF No. 145.  In a response brief filed September 4, 2018, Common Cause Plaintiffs consented to the entry of Legislative Defendants' stay Motion, subject to two conditions: (1) Legislative Defendants file their Jurisdictional Statement with the Supreme Court on or before October 1, 2018, and (2) Legislative Defendants seek no requests for extensions of time while their appeal is pending before the Supreme Court.  Common Cause Pls.' Br. in Resp. to Leg. Defs.' Emer. Mot. To Stay Pending S. Ct. Rev. & Req. for Exp. Hr'g 2–3, Sept. 4, 2018, ECF No. 149.  If Legislative Defendants breach either of those conditions, the stay would immediately dissolve.  Common Cause Plaintiffs requested those conditions to ensure that Legislative Defendants promptly prosecute their appeal to the Supreme Court.  *Id.* at 3. Legislative Defendants subsequently expressed support for Common Cause Plaintiffs' approach, and League Plaintiffs similarly did not object.

## II.

"The Court considers four factors when determining whether to issue a stay pending appeal:  '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties

interested in the proceeding; and (4) where the public interest lies.'" *Harris v. McCrory*, No. 1:13-CV-949, 2016 WL 6920368, at *1 (M.D.N.C. Feb. 9, 2016) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *accord Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970). "A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appeal." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks omitted).

"[A] stay is considered 'extraordinary relief' for which the moving party bears a 'heavy burden,'" and "[t]here is no authority to suggest that this type of relief is any less extraordinary or the burden any less exacting in the redistricting context." *Larios v. Cox*, 305 F. Supp. 2d 1335, 1336 (N.D. Ga. 2004) (quoting *Winston-Salem/Forsyth Cty. Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (Burger, Circuit Justice, 1971)); *see Personhuballah v. Alcorn*, 155 F. Supp. 3d 552, 558–59 (E.D. Va. 2016) (Diaz, J.) (same); *Does 1-5 v. Cooper*, No. 1:13CV711, 2016 WL 10587195, at *1 (M.D.N.C. March 2, 2016) ("The granting of a stay pending appeal is 'an extraordinary remedy.'" (quoting *Adams v. Walker*, 488 F.2d 1064, 1065 (7th Cir. 1973))). To that end, "[a]s with other types of cases, district courts evaluating redistricting challenges have generally denied motions for a stay pending appeal." *Harris*, 2016 WL 6920368, at *1 n.1 (collecting cases).

Neither Legislative Defendants' Motion nor their supporting brief explicitly addresses any of the well-established factors set forth in *Hilton*. Normally, that failure alone would be fatal to Legislative Defendants' Motion. *See, e.g.*, *Hickman-Bey v. Livingston*, No. 2:13-CV-266, 2013 WL 6890767, at *2 (S.D. Tex. Dec. 31, 2013).

Nonetheless, given the parties' agreement, we grant the Motion, subject to the two agreed upon conditions: (1) Legislative Defendants file their Jurisdictional Statement with the Supreme Court by October 1, 2018, and (2) Legislative Defendants seek no requests for extension of time while their appeal is pending before the Supreme Court. If Legislative Defendants breach either of these conditions, the stay will immediately, and without any action by this Court, dissolve. Additionally, if Legislative Defendants breach either of these conditions, this Court will move forward immediately with drawing its own remedial districting plan.[2]

III.

Although we exercise our discretion to grant Legislative Defendants' motion, we admonish counsel for Legislative Defendants regarding their briefing submitted allegedly "in support" of the Motion. Under Federal Rule of Civil Procedure 11, "[b]y presenting to the court a [brief]—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the brief "is not being presented for any improper purpose" and that "the factual contentions [therein] have evidentiary support[.]" Rather than addressing the relevant legal standard and why Legislative Defendants are entitled to the extraordinary relief of a stay under that standard, counsel for Legislative Defendants devote much of their briefing to making

---

[2] This Court reserves judgment as to whether, in such circumstances, it will consider a remedial plan drawn by the General Assembly.

baseless ad hominem attacks against the motives and integrity of this Court and appealing to irrelevant extra-legal sources.

First, in their brief, counsel for Legislative Defendants state that this Court "threat[ened] to impose a proportional representation congressional map on North Carolina" in what amounts to an effort "to sway election results in an ongoing election for one set of candidates," characterizing this Court as "meddl[ing]" in the State's election. Leg. Defs.' Mem. in Supp. of Mot. to Stay & in Resp. to the Court's Order of August 27, 2018 ("Leg. Defs.' Br.") at 2, Aug. 31, 2018, ECF No. 137. That statement is a baseless affront to this Court. To the contrary, this Court's simple *request for briefing* as to how to best remedy the constitutional violation did not amount to a "threat." Rather, it reflected an effort by this Court to engage in informed decision-making with the assistance of the parties, nothing more.

Second, there is no evidence in the record to support counsel for Legislative Defendants' claim that this Court desires to "sway" an election in favor of Democratic candidates. On the contrary, the guiding principle of this Court's opinion and judgment is that the Constitution *bars* the government—whether the legislature, the executive, or the judiciary and whether controlled by Republicans or Democrats—from "swaying" an election in favor of one set of candidates. *Common Cause II*, 2018 WL 4087220, at *1 ("[T]he Constitution does not allow elected officials to enact laws that distort the marketplace of political ideas so as to intentionally favor certain political beliefs, parties, or candidates and disfavor others."). In this instance, the only party to these proceedings that has sought to "sway election results . . . for one set of candidates" is the North

8

Carolina General Assembly's Republican majority, which counsel for Legislative Defendants concede, as they must, expressly sought to draw a map that would "advantage" the Republican Party. Ex. 1007.

Third, this Court's exercise of its constitutional authority and obligation under Article III and the Supremacy Clause to review state law to determine whether it complies with the Constitution—an authority recognized by the Supreme Court more than 200 years ago in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) (Marshall, C.J.), and repeatedly relied on by the Supreme Court to strike down state laws, including state districting plans, *e.g.*, *Cooper v. Harris*, 137 S. Ct. 1455, 1463 (2017)—in no way amounts to "meddl[ing]" in a State's election. To suggest otherwise reflects a fundamental misunderstanding of—or refusal to accept the authority of—the Constitution.

Fourth, counsel for Legislative Defendants further characterize this Court's remedial efforts as "unelected federal judges usurping the role of the State's elected representatives by enjoining a congressional plan two months before a general election under a legal theory that has never before been accepted by the Supreme Court." Leg. Defs.' Br. at 4. To begin, as a matter of fact, this Court's order *did not* "enjoin[] a congressional plan two months before a general election," but rather asked the parties to submit briefing addressing whether it would be feasible to do so, so as to remedy Plaintiffs' injury as quickly as possible. And under our Constitution, the Framers determined that the public's best interests are served by an appointed, as-opposed to elected, judiciary. *See generally* The Federalist No. 78 (Alexander Hamilton).

Therefore, that the judges on this Court and the remainder of the federal judiciary are "unelected" in no way undermines the authority of the federal judiciary to act in its constitutionally defined sphere.

Fifth, counsel for Legislative Defendants state in their brief that this Court intended to "engag[e] in judicial gerrymandering that would perpetuate the very conduct it is supposedly remedying," citing in support *only* a newspaper editorial. Leg. Defs.' Br. at 4 (citing Editorial, *North Carolina's Gerrymander Coup*, Wall St. J., Aug. 31, 2018, at A14). Our federal courts decide cases on the basis of legal authorities, not newspaper editorials, let alone a selectively chosen[3] editorial that counsel for Legislative Defendants knew or should have known is riddled with misleading factual and legal assertions.[4] That

---

[3] *Compare, e.g.*, Editorial, *No easy answer on gerrymandering*, Winston-Salem Journal, Sept. 1, 2018, *available at* https://www.journalnow.com/opinion/editorials/our-view-no-easy-answer-to-gerrymandering/article_2e734dea-4ed0-5c6f-9e4b-b51eb1a6b3a9.html; David Daley, Op-Ed, *The Four Corners offense has returned. Now NC Republicans are using it*, The News & Observer, Aug. 30, 2018, *available at* https://www.newsobserver.com/opinion/op-ed/article217568145.html.

[4] Among other misleading and inaccurate assertions, the editorial states that "[a] liberal panel of judges in 2016 invalidated the state's congressional *map* as an unconstitutional racial gerrymander," *see* Leg. Defs.' Br. Ex. 1 (emphasis added), an apparent reference to another panel of this Court's decision in *Harris v. McCrory*, 159 F. Supp. 3d 600 (M.D.N.C. 2016). *Harris* held that *two* of the State's *thirteen* congressional districts constituted racial gerrymanders in violation of the Equal Protection Clause. *Id.* at 604. The Supreme Court *affirmed Harris*, reaching that conclusion *unanimously* with respect to one of the two districts. *Cooper*, 137 S. Ct. at 1463; *id.* at 1487 n.1 (Alito, J., concurring in the judgment in part and dissenting in part).

The editorial also repeatedly suggests that this Court was divided as to its judgment that the 2016 Plan violated the Constitution, with only the "liberal judges" voting to strike down the 2016 Plan. *See* Leg. Defs.' Br. Ex. 1. But except for the majority opinion's conclusions (1) that the 2016 Plan as a whole violated the First

(Continued)

the editorial relies on misleading legal and factual assertions to foster distrust in the judiciary by calling into question its impartiality renders the decision of counsel for Legislative Defendants—as officers of the court and representatives of the leadership of the North Carolina General Assembly—to rely on the editorial all the more inappropriate. N.C. Rule of Prof'l Conduct R. 8.2 cmt. [4] ("[F]alse statements by a lawyer can unfairly undermine public confidence in the administration of justice."). And most assuredly, that newspaper's editorial[5] did not provide counsel for Legislative Defendants with a basis—let alone a factual basis sufficient to satisfy Rule 11 and their ethical obligations as members of the bar—to impugn this Court's motives, integrity, and independence. *See id.* R. 8.2(a) ("A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, or other adjudicatory officer . . .").

In sum, there is no place in the legal system for unsupported attacks on the judiciary's motives and integrity by counsel representing parties before our courts. As in

---

Amendment and (2) that Plaintiffs had standing to lodge Equal Protection challenges to three of the thirteen districts in the 2016 Plan, this Court was *unanimous* in holding that nine other districts violated the Equal Protection Clause and that the 2016 Plan as a whole violated two provisions in Article I. *Id.* at *13 (majority op.); *id.* at *112 (Osteen, J., concurring in part and dissenting in part).

[5] We further note that certain adjudicative facts reported in news articles may be admissible under Federal Rule of evidence 201(b). But the Federal Rules of Evidence prohibit opinion testimony by lay witnesses. *See* Fed. R. Evid. 701. Accordingly, newspaper editorials, like the opinion editorial relied upon by counsel for Legislative Defendants, do not constitute competent opinion evidence when, as here, the authors of the editorial have not been qualified as experts.

all cases, counsel should abide by the constraints of the legal profession to represent their clients zealously within the bounds of the law with due respect for the judiciary, and in accordance with their obligations under the Rules of Civil Procedure and as members of the bar.

IV.

For the reasons set forth above, and subject to the conditions set forth in Part II *supra*, the Motion is GRANTED.

Date: September 12, 2018

/s/_____
Hon. James A. Wynn, Jr.

/s/_____
Hon. William L. Osteen, Jr.

/s/_____
Hon. W. Earl Britt

OSTEEN, Jr., J., concurring and writing separately to provide additional reasons for granting the stay:

A stay is an exercise of discretion. *Williford v. Armstrong World Indus.*, 715 F.2d 124, 127 (4th Cir. 1983). I find the exercise of discretion to grant Legislative Defendants' motion to stay reasonable and agree with the opinion of this court. While I might otherwise decline to impose a condition of requiring Legislative Defendants to prosecute their appeal with no requests for extension of time, Plaintiffs agree upon that condition and Legislative Defendants do not oppose that condition.

I write separately because I find a stay is appropriate for additional reasons to those addressed in this court's memorandum opinion.

Throughout this case, I believe we have applied Supreme Court precedent as required. However, the Supreme Court's opinion in *Gill v. Whitford*, ____ U.S. ____, 138 S. Ct. 1916 (2018), created enough uncertainty in this area of the law such that I believe a stay is appropriate. I find this particularly true in light of the Supreme Court's comment in remanding *Gill* that "[t]his is not the usual case. It concerns an unsettled kind of claim this Court has not agreed upon, the contours and justiciability of which are unresolved." 138 S. Ct. at 1933–34.[1]

---

[1] I agree with the majority here that "[t]here is no authority to suggest that this type of relief is any less extraordinary or the burden any less exacting in the redistricting context." (Mem. Op. at 6 (quoting *Larios v. Cox*, 305 F. Supp. 2d 1335, 1336 (N.D. Ga. 2004)). I have considered the four factors generally required for the issuance of a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). (Continued)

Even if this Supreme Court should agree that Plaintiffs here have standing, this Supreme Court may very well conclude that partisan gerrymandering claims are not justiciable. Four Justices in *Vieth v. Jubelirer* recognized in 2004 that "[e]ighteen years of essentially pointless litigation have persuaded us that *Bandemer* is incapable of principled application. We would therefore overrule that case, and decline to adjudicate these political gerrymandering claims." 541 U.S. 267, 305 (2004) (referencing *Davis v. Bandemer*, 478 U.S. 109 (1986)). The Supreme Court decided *Vieth* fourteen years ago, and questions still remain as to the principled application of *Bandemer*.

The question of justiciability in this context involves application and review of "six independent tests for the existence of a political question." *Vieth*, 541 U.S. at 277 (citing *Baker v. Carr*, 369 U.S. 186 (1962)). Those six tests include:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision

---

Given Common Cause Plaintiffs' lack of objection to a stay, at least on conditions, it does not appear any injury will inure to Plaintiffs and arguably the applicants confront some harm if required to act pursuant to this court's order. In light of the unsettled nature of the claim and the relationship of the claim to legislative action, I find the public interest falls in favor of a stay. With respect to a strong showing of a likelihood of success on the merits, I find that the unsettled nature of the claim and its unresolved contours and justiciability create unique circumstances and enough uncertainty as to possible outcomes to suggest a stay is appropriate.

14

> already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Vieth*, 541 U.S. at 277–78 (citing *Baker*, 369 U.S. at 217) (alterations in original). In my opinion, when the Supreme Court in *Bandemer* answered the question of justiciability affirmatively, that Court necessarily found that partisan gerrymandering did not meet the political question factors described above. I therefore interpret Supreme Court precedent to require us, as a district court, to hold that political gerrymandering claims can succeed where plaintiffs prove "both intentional discrimination against an identifiable political group and an actual discriminatory effect on that group." *Bandemer*, 478 U.S. at 127; *Vieth*, 541 U.S. at 281 (quoting the same); *see also Bandemer*, 478 U.S. at 161–62 (Powell, J., concurring in part and dissenting in part) ("[T]he plurality expresses the view, with which I agree, that a partisan political gerrymander violates the Equal Protection Clause only on proof of 'both intentional discrimination against an identifiable political group and an actual discriminatory effect on that group.'"). I believe lower courts are obliged to apply that precedent until the Supreme Court states otherwise. *See United States v. Danielczyk*, 683 F.3d 611, 615 (4th Cir. 2012) ("The *Agostini* principle provides that in circumstances when Supreme Court precedent has "direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [courts] should follow the line of cases which directly controls, leaving to [the Supreme] Court the prerogative of overturning its own decisions.") (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1989)).

This Supreme Court may ultimately conclude that no judicially discernible and manageable standard exists, as argued by the plurality in *Vieth*. 541 U.S. at 281. This Supreme Court has the authority to and therefore may reconsider the six-factor political question test from *Baker* and find that the original standard for partisan gerrymandering claims—intentional discrimination and discriminatory effect—does not provide a judicially workable framework. The Court may, after review and consideration, find other *Baker* factors problematic.[2]

With respect to a challenge under Article I, reasonable jurists may disagree as to Article I's applicability in this context. *See Agre v. Wolfe*, 284 F. Supp. 3d 591, 601–03 (E.D. Pa. 2018) *appeal dismissed*, 138 S. Ct. 2576 (May 29, 2018) (Mem.), and *appeal dismissed sub nom.*, *Scarnati v. Agre*, 138 S. Ct. 2602 (June 4, 2018) (Mem.). Nevertheless, assuming this Supreme Court finds political gerrymandering claims justiciable under the Equal Protection clause, I believe that for many of the same reasons a similar claim exists under Article I. *See, e.g.*, *Shapiro v. McManus*, 203 F. Supp. 3d 579, 599 (D. Md. 2016) ("These factual allegations . . . therefore support a plausible claim that the State's redrawing of the Sixth District's lines violated the plaintiffs' rights

---

[2] Justiciability also turns on whether political gerrymandering requires an initial policy determination of a kind clearly for nonjudicial discretion, *see Baker*, 369 U.S. at 217; that is, whether political and partisan interests should be limited in the political process of drafting districts. While it appears to me that *Bandemer* found political gerrymandering issues justiciable, in light of the uncertainty described in *Gill*, it is possible that all of the political question factors raised in *Baker* may be considered by this Court. These include whether the predominance of partisan considerations is appropriate for judicial determination or whether that is a matter for nonjudicial, i.e., legislative or Congressional, discretion.

under . . . Article I, § 2."). Even so, the Court may very well find that partisan gerrymandering is not justiciable under any Constitutional theory.

The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). We have made our findings in our order. However, I believe judicial economy dictates deliberation before proceeding with the implementation of that order. Until the Supreme Court either affirms or reverses the holding of this court, I believe the public interest is best served by a stay of our order.

I concur in the decision to grant the motion and stay this case pending the timely filing and disposition of an appeal to the Supreme Court.