# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| COMMON CAUSE, et al., <br><br> Plaintiffs, <br> v. <br><br> ROBERT A. RUCHO, in his official capacity as Chairman of the North Carolina Senate Redistricting Committee for the 2016 Extra Session and Co-Chairman of the Joint Select Committee on Congressional Redistricting, et al., <br><br> Defendants. | No. 1:16-CV-1026 |
| LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA, et al., <br><br> Plaintiffs, <br> v. <br><br> ROBERT A. RUCHO, in his official capacity as Chairman of the North Carolina Senate Redistricting Committee for the 2016 Extra Session and Co-Chairman of the Joint Select Committee on Congressional Redistricting, et al., <br><br> Defendants. | No. 1:16-CV-1164 |

Before the Court are Legislative Defendants' Bill of Costs and Plaintiffs' Joint Motion for Disallowance of Costs. Because 28 U.S.C. § 1919 permits the Court to order the payment of just costs, and because some of the costs Legislative Defendants seek are

not just, we grant Plaintiffs' motion for disallowance of costs and decline to award costs to the Legislative Defendants as described below.

## BACKGROUND

In August and September 2016, Plaintiffs brought these consolidated cases challenging North Carolina's congressional districts as an unconstitutional partisan gerrymander. Legislative Defendants did not dispute that the North Carolina General Assembly intended for the districts to favor supporters of Republican candidates and disfavor supporters of non-Republican candidates. Following a four-day trial in October 2017, we concluded the congressional district map violated the Equal Protection Clause, the First Amendment, and Article I of the United States Constitution. *Common Cause v. Rucho*, 279 F. Supp. 3d 587 (M.D.N.C. 2018).

On June 25, 2018, the Supreme Court vacated this Court's judgment and remanded for reconsideration in light of the Supreme Court's opinion in *Gill v. Whitford*, 138 S. Ct. 1916 (2018). *Rucho v. Common Cause*, 138 S. Ct. 2679 (2018). After briefing by the parties on *Gill*, we concluded that Plaintiffs had sufficiently established their standing to assert partisan gerrymandering claims. With the exception of a single district, we again concluded Plaintiffs prevailed on all their constitutional claims. *Common Cause v. Rucho*, 318 F. Supp. 3d 777 (M.D.N.C. 2018).

On June 27, 2019, the Supreme Court vacated this Court's judgment, holding that claims of partisan gerrymandering "present political questions beyond the reach of the federal courts." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2506–07 (2019). The Supreme Court also awarded $12,205.78 in costs to Defendants.

On September 5, 2019, obeying the mandate of the Supreme Court, we dismissed the case for lack of jurisdiction. On October 4, 2019, the Legislative Defendants submitted a Bill of Costs and a supporting affidavit, seeking a total of $41,762.37 in costs, including costs for transcripts, costs for a demonstrative map used at trial, and costs mandated by the Supreme Court. Plaintiffs moved for disallowance of some of these costs. Specifically, they contest the first two categories, totaling $29,556.59. Plaintiffs do not contest the $12,205.78 mandated by the Supreme Court. We grant Plaintiffs' motion to disallow the $29,556.59 in other costs.

## **ANALYSIS**

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides, as relevant here, "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." The Rule "codifies a venerable presumption that prevailing parties are entitled to costs." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013). In contrast to that general rule, 28 U.S.C. § 1919 governs awards of costs when a case is dismissed for lack of jurisdiction. Section 1919 provides, "Whenever any action or suit is dismissed in any district court, the Court of International Trade, or the Court of Federal Claims for want of jurisdiction, such court may order the payment of just costs."

Legislative Defendants request costs associated with this litigation, contending they are entitled to costs as a prevailing party under Rule 54(d)(1). Plaintiffs counter that § 1919, rather than Rule 54(d)(1), should control the award of costs in this case because the case undisputedly was dismissed for lack of jurisdiction. Finally, Legislative Defendants argue

3

that even if § 1919 controls, the costs they have requested are "just" and therefore should be awarded to them under that provision.

To begin, the parties dispute whether the award of costs is controlled by Rule 54(d)(1)—which provides that "costs . . . should be allowed to the prevailing party"—or § 1919—which provides that the "court may order the payment of just costs." The parties agree that Rule 54(d)(1) generally awards costs to the prevailing party unless, for example, a federal statute "provides otherwise." Unanimous authority supports Plaintiffs' contention that § 1919 is an example of such a statute. *See Whitford v. Gill*, 402 F. Supp. 3d 529, 531–32 (W.D. Wis. 2019) (collecting cases). Defendants cite no contrary authority. Because Rule 54(d), by its own terms, only applies if no statute "provides otherwise," § 1919 governs here.

Notably, if we were to accept Defendants' interpretation that § 1919 is not statute that "provides otherwise" under Rule 54(d)(1), then § 1919 would have no meaning beyond what is already provided in Rule 54(d)(1). Such a superfluous interpretation of a statute cannot stand, at least without compelling evidence of congressional intent. *E.g.*, *Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687, 703 (4th Cir. 2019) ("We do not lightly impute to Congress an intent to use terms that have no operation at all." (internal quotation marks omitted)). Defendants have cited no such evidence.

And, to the contrary, Congress enacted § 1919's specific provision for cases dismissed for lack of jurisdiction against the backdrop of Rule 54(d)(1)'s general rule. Though § 1919 "traces its roots to an 1875 congressional act," *Otay Land Co. v. United Enters. Ltd.*, 672 F.3d 1152, 1156 (9th Cir. 2012), the statute was last amended in 1992,

4

*see* Federal Courts Administration Act of 1992, Pub. L. No. 102-572, § 908, 106 Stat. 4506, 4519. By that time, Rule 54(d) stated that prevailing parties were generally entitled to costs, except in certain instances, such as when a federal rule provided otherwise. *See* Fed. R. Civ. P. 54(d) (1990) ("Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ."). We conclude, like other courts that have considered the question, that § 1919 is a statute that "provides otherwise" from Rule 54(d)(1).

That brings us to the application of § 1919 and the question of what constitutes "just" costs. In *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005), the Supreme Court analyzed 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."[1] The Supreme Court first emphasized the district court's discretion, arising from use of the word "may." *Martin*, 546 U.S. at 136. Because § 1919 also uses "may," we conclude § 1919 is discretionary and does not carry the presumption in favor of awarding costs embodied in Rule 54(d)(1). *See Otay*, 672 F.3d at 1156.

*Martin* went on to analyze the meaning of "just costs" in the context of § 1447(c), concluding that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party *lacked an objectively reasonable basis* for

---

[1] Though the statute has been amended since *Martin*, this language remains the same.

5

seeking removal." 546 U.S. at 141 (emphasis added). Plaintiffs urge us to adopt the same standard for costs here.

We conclude that *Martin*'s analysis on this point is inapposite. Admittedly, the two statutes use similar language. *Compare* 28 U.S.C. § 1447(c) (allowing courts to "require payment of just costs and any actual expenses"), *with id.* § 1919 (allowing courts to "order the payment of just costs").[2] But *Martin*'s conclusion regarding the appropriateness of attorneys' fees in the context of removal rested in large part on precedent regarding attorneys' fees and Congress's policy objectives related to removal. *Martin*, 546 U.S. at 139–41. The instant context is distinct. *See Otay*, 672 F.3d at 1158–59 (declining to adopt the *Martin* "objectively reasonable" standard for the § 1919 analysis).

Nevertheless, costs would not be just here. The Fourth Circuit has not provided guidance on what constitutes "just costs," but the Ninth Circuit analyzed the issue in *Otay*. There, the Ninth Circuit held that "a district court should consider what is most fair and equitable under the totality of the circumstances" and provided "a number of considerations that could be factored into such a decision," including "the strength of the plaintiff's jurisdictional claim," which it found to be "a legitimate consideration, albeit not definitive." *Otay*, 672 F.3d at 1157–58.

Considering the totality of the circumstances—including the strength of Plaintiffs' jurisdictional claim—requiring Plaintiffs to pay $29,556.59 in costs to Legislative

---

[2] In fact, § 1447 originates from the same 1875 statute as does § 1919. *See Otay*, 672 F.3d at 1156 & n.2.

6

Defendants would not be just. Plaintiffs brought this action to remedy constitutional violations affecting their rights to equal protection of the law and to freedom of speech and association.

We ruled in Plaintiffs' favor—twice. First following the trial, and again after the Supreme Court's remand in light in *Gill v. Whitford*. And even in *Rucho*, the Supreme Court did not hold that North Carolina's congressional maps were lawful or that Plaintiffs' rights were not violated. Indeed, the *Rucho* majority acknowledged that "[e]xcessive partisanship in districting leads to results that reasonably seem unjust" and that "such gerrymandering is 'incompatible with democratic principles.'" *Rucho*, 139 S. Ct. at 2506 (quoting *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2658 (2015)). Instead, the Supreme Court held that Plaintiffs' claims presented political questions beyond the reach of the federal courts. *Id.* at 2506–07.

Plaintiffs had reason to believe redress might be available in federal court. The Supreme Court had previously held partisan gerrymandering claims to be justiciable. *Davis v. Bandemer*, 478 U.S. 109, 123–25 (1986). The Court had the opportunity to reverse course and hold that such claims were nonjusticiable in *Vieth v. Jubelirer*, 541 U.S. 267 (2004), but did not. And although Plaintiffs were ultimately unable to vindicate their rights in federal court, a North Carolina state court enjoined the use of the same congressional districts in future elections, concluding the plaintiffs in that case were likely to succeed on their claims that the district maps violated the North Carolina Constitution's free elections, equal protection, and freedom of speech and freedom of assembly clauses. *Harper v. Lewis*,

7

19 CVS 012667, 2019 N.C. Super. LEXIS 122, at *16, *18 (Wake Cty. Super. Ct. Oct. 28, 2019).

Certainly, Legislative Defendants and Plaintiffs have incurred costs in this litigation. But where every court to have considered this case made clear it did not condone North Carolina's gerrymandered congressional districts, we conclude the just allocation of costs is to leave each party to bear its own costs.

Two other courts considering costs in partisan gerrymandering cases after the Supreme Court's decision in *Rucho* have both concluded that awarding costs would not be just. *See Ohio A. Philip Randolph Inst. v. Householder*, No. 1:18-cv-357, 2020 WL 553899, at *3 (S.D. Ohio Feb. 4, 2020); *Whitford*, 402 F. Supp. 3d at 533–34. Both courts emphasized that it was not unreasonable for the plaintiffs to have believed their claims were justiciable, given earlier Supreme Court precedent. *See Ohio*, 2020 WL 553899, at *3; *Whitford*, 402 F. Supp. 3d at 533. And *Whitford* noted that the Supreme Court did not hold in *Rucho* that the plaintiffs' claims were unreasonable or that the harms they alleged were not troubling—just that the claims were nonjusticiable. 402 F. Supp. 3d at 533. We agree with these other courts' reasoning.

Finally, Legislative Defendants argue that because the Supreme Court ordered that this Court's judgment was "vacated with costs" and awarded costs to Defendants incurred before the Supreme Court, the Supreme Court's decision serves as the "law of the case" and binds us from declining to award costs.

The Supreme Court Rules provide a mechanical evaluation of costs: unless the Court orders otherwise, the petitioner pays costs if the Court affirms, while the respondent

8

Case 1:16-cv-01026-WO-JEP   Document 169   Filed 04/17/20   Page 8 of 11

pays costs if the Court reverses or vacates. Sup. Ct. R. 43(1)–(2). Moreover, the only taxable items are the Clerk's fees and the cost of printing the joint appendix. Sup. Ct. R. 43(3). Those were the costs ordered by the Supreme Court here, just as in *Whitford* and *Ohio*. *See Ohio*, 2020 WL 553899, at *1 (discussing costs in *Ohio*, which were limited to the Clerk's fees); *id.* at *3 n.3 (discussing costs in *Whitford*, which included both the Clerk's fees and the cost of printing the record).[3] "Thus, the Supreme Court awards costs in an automatic fashion based solely on whether the Court affirms a judgment or reverses/vacates a judgment; whereas district courts must consider whether cost shifting is warranted under" § 1919, which "does not carry a presumption of costs and supplies a discretionary 'just costs' standard." *Id.* at *4. The Supreme Court's automatic awarding of some costs has no bearing on this Court's discretionary evaluation under § 1919.

Therefore, we decline to award the Legislative Defendants' request for costs of $29,556.59 for transcripts and demonstratives. The Supreme Court's order of $12,205.78 in costs is unaffected by this Order.

---

[3] Additionally, the Supreme Court mandates in both cases used the same "vacated with costs" language as in the judgment here. *See* S.D. Ohio No. 1:18-cv-357, Dkt. No. 288, at 3; W.D. Wis. No. 3:15-cv-421, Dkt. No. 195, at 1.

**ORDER**

IT IS ORDERED that Plaintiffs' motion for disallowance of costs, Dkt. 163 in 1:16-CV-01026 and Dkt. 161 in 1:16-CV-01164, is GRANTED. The Legislative Defendants' request for an award of costs, Dkt. 162 in 1:16-CV-01026 and Dkt. 160 in 1:16-CV-01164, is DENIED IN PART and GRANTED IN PART.

Date: April 17, 2020

/s/_____
Hon. James A. Wynn, Jr.

/s/_____
Hon. William L. Osteen, Jr.

/s/_____
Hon. W. Earl Britt

10

Case 1:16-cv-01026-WO-JEP   Document 169   Filed 04/17/20   Page 10 of 11

OSTEEN, Jr., J., concurring and writing separately to provide additional reasons for denying Defendants' motion to award costs:

I concur in the majority's reasoning that 28 U.S.C. § 1919 controls and in the decision to deny Defendants' motion to award costs. Given the state of the law surrounding this issue, "[i]t was not unreasonable for Plaintiffs to seek redress in the federal courts." Whitford v. Gill, 402 F. Supp. 3d 529, 533 (W.D. Wis. 2019). Plaintiffs were successful before this court twice based on this panel's unanimous conclusion that Supreme Court precedent recognized a constitutional claim on the merits.

I choose to write separately because I believe it is sufficient to base this panel's conclusion on the finding that Plaintiffs reasonably believed redress might be available in federal court and that this court ruled in Plaintiffs' favor twice. I thus find it unnecessary to comment, and make no comment, upon any dicta regarding the lawfulness or justness of partisan gerrymandering in holding that Defendants are not entitled to the requested costs.